**In re Adela J. HOBAICA, Debtor.**

**Bankruptcy No. 86–00322.**

United States Bankruptcy Court, N.D. New York.

Aug. 31, 1987.

James F. Selbach, P.C., Syracuse, N.Y., for debtor.

Evans, Severn, Bankert, & Peet, Utica, N.Y., for The Savings Bank of Utica; Edward D. Earl, of counsel.

MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

The Debtor seeks to avoid the judicial lien held by the Savings Bank of Utica ("Bank") which she alleges constitutes a preferential transfer under § 547(b) of the Bankruptcy Code, 11 U.S.C. §§ 101–1330 ("Code"). The following facts are not in dispute.

Debtor filed her voluntary petition for relief under Chapter 13 of the Code on March 13, 1986. In Schedule A–2 filed with her petition, Debtor listed Signal Finance of New York, Inc. ("Signal") as her lone secured creditor holding a claim of $15,434.72. The identified real property acting as security for the debt was Debtor's homestead, with an uncontested value of $45,000.00.

On December 24, 1985, a judgment in the Bank's favor against the Debtor in the amount of $5,412.79 had been docketed by the Clerk for Oneida County, New York. The docketing was within the 90 days next preceding the filing of the Debtor's bankruptcy petition.

On Schedule A–3, filed with her petition, Debtor listed the following creditors holding unsecured claims:

| | |
|---|---|
| Citibank | $3,417.00 |
| Rex-Oil Co. | $2,830.00 |
| Chase-Manhattan Visa | <u>$1,437.41</u> |
| | $7,684.41 |

The Debtor did not schedule the Bank's claim, and when it is added to the scheduled unsecured claims, total remaining claims are $13,097.20.

As for personal property set out on Schedule B–2, Debtor identified miscellaneous property valued at $2,300.00; additional personal property with a value of

$6,300.00, consisting of tax refunds, an organ, and a mortgage, was listed on Schedule B–3. Pursuant to Code § 522(b)(1), § 282 and § 283 of the New York Debtor and Creditor Law (McKinney Supp.1987), and § 5205 and § 5206 of the New York Civil Practice Law and Rules (McKinney 1978 and Supp.1987), the Debtor claimed as exempt property the personal property described in Schedule B–2, as well as the maximum homestead exemption of $10,-000.00.

Debtor's summary of debts to property reveals total debts of $23,119.30, and total property of $53,600.00.

Debtor initially proposed a five-year repayment plan under which unsecured claims would be paid in full. Debtor proposed to alter the contractual interest rate due Signal, and thereafter pay the secured claim in full. The Court, however, sustained Signal's objection to plan confirmation on the grounds that Code § 1322(b)(2) does not allow modification of claims secured only by an interest in a debtor's principal residence. *In re Hobaica*, 65 B.R. 693 (Bankr.N.D.N.Y.1986).

Thereafter, Debtor sought to utilize Code § 522(f) to avoid the fixing of the Bank's lien. The Bank objected, noting that sufficient equity existed in Debtor's real property so that its lien did not impair Debtor's homestead exemption; Debtor did not appear at the return date of her motion, and an Order sustaining the Bank's objection was entered on May 1, 1987.

The Debtor now contends the Bank's judgment lien is a voidable, preferential transfer. At the return date, the Bank alleged: 1) it received no more as a result of the transfer than it would have under a hypothetical Chapter 7 distribution as of the date of petition filing; 2) the Debtor's calculations fail to account for the $6,300.00 in scheduled, non-exempt personal property which is also available for distribution to creditors; 3) the Debtor was not "insolvent" when the transfer was made; and 4) even if the transfer is deemed preferential, it is only voided to the extent determined to be so.

After entertaining counsel's arguments, the Court requested the parties to reach an agreement on the amount of administrative expenses which could be expected to be incurred prior to distribution were the case one under Chapter 7. While a formal stipulation was not submitted, Debtor filed an informal computation of likely expenses were her real property alone liquidated and the proceeds disbursed. The Bank has not commented upon Debtor's categorization of anticipated expenses, and hence, the Court adopts as appropriate Debtor's categorization of at least the type of expenses which would be incurred were the estate liquidated.

## JURISDICTION STATEMENT

The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. § 1334, and 28 U.S.C. § 157(a) and (b)(2)(F).

## CONCLUSIONS OF LAW

The parties do not dispute that entry of the judgment on the Bank's behalf was a transfer of Debtor's property to a creditor on account of an antecedent debt within the 90 days preceding the commencement of the case. But all six elements[1] of Code § 547(b) must be established in order to sustain an allegation of preferential transfer. *A.I. Credit Corp. v. Drabkin (In re Auto-Train Corp.),* 49 B.R. 605, 609 (D.D. C.1985), *aff'd,* 800 F.2d 1153 (D.C.Cir.1986); *Sunset Enterprises, Inc. v. B & B Coal Co., Inc.,* 38 B.R. 712, 717 (W.D.Va.1984).

The Trustee[2] bears the burden of proving each necessary element. Code § 547(g); *In re Thayer,* 38 B.R. 412, 421 (Bankr.D.Vt.1984); *Pereira v. United States (In re Rodriguez),* 50 B.R. 576, 581–82 (Bankr.E.D.N.Y.1985). As four of

---

**1.** To the five elements of a preference set out in Code § 547(b), the Court adds the necessity that there have been a "transfer of property of the debtor." Code § 101(5) sets forth the broad definition of what is meant by the use of the term "transfer".

**2.** Code § 522(h) authorizes the Debtor to seek avoidance of the alleged preferential transfer herein.

the six preference elements are admittedly satisfied, the Court initially looks to whether the transfer allowed the Bank to receive more than it would were this case one under Chapter 7.

The thrust of the Bank's argument is that the Debtor must prove the creditor received more as a result of the entry of the judgment lien than it would have received under a hypothetical Chapter 7 distribution, referenced from the time the case was commenced. In essence, the Bank contends the Court is to ignore actual or anticipated post-petition administrative expenses associated with a liquidation distribution of estate assets.

The question as to what time the bankruptcy court is to construct the hypothetical distribution was raised in *Neuger v. United States (In re Tenna Corp.)*, 801 F.2d 819 (6th Cir.1986). In that case, the bankruptcy court granted a post-petition lender super-priority liens on all of the debtor's property. The debtor's reorganization efforts were fruitless, and the case was converted to a Chapter 7 proceeding.

The Chapter 7 trustee then commenced an adversary proceeding against the United States to avoid a pre-petition tax payment made to the Internal Revenue Service. The bankruptcy court determined that Code § 547(b)(5) required it to construct the hypothetical distribution as of the date of the hearing on the adversary proceeding. It consequently included in its calculations the substantial post-petition accumulated debt, and determined the tax payment to be a preference. The government appealed, contending that the hypothetical Chapter 7 distribution is to be made as of the date the bankruptcy petition is filed.

The Court of Appeals reviewed the decision of the United States Supreme Court in *Palmer Clay Products Co. v. Brown*, 297 U.S. 227, 56 S.Ct. 450, 80 L.Ed 655 (1936), and determined that the case prescribed the *per se* rule advanced by the government. This conclusion was butressed by an analysis of lower court rulings, as well as a review of the legislative history behind the Code's preference provisions.

Yet while the Court of Appeals held the hypothetical distribution construction was not to include post-petition debt, not all obligations are to be ignored:

> We recognize that any administrative expenses incurred during the pendancy of the bankruptcy proceeding should be included in the determination.... Administrative expenses are a constant element in all bankruptcy proceedings and can be derived with some degree of certainty, even when constructing a hypothetical liquidation; super-priority liens, of the type here, do not possess these characteristics.

*Id*, 801 F.2d at 823 (citations omitted). This determination aligns with a decision of the United States Court of Appeals for the Second Circuit in a case considering the preference provisions of the former Bankruptcy Act. *Ely v. Greenbaum*, 85 F.2d 501, 503–04) (2d Cir.1936).

█ Thus, the end result is that whenever a hypothetical distribution as of the date of bankruptcy filing, reveals the preferred creditor would have received less than a 100 percent dividend on its claim, the prepetition transfer is voidable. "Any dividend less than 100 percent insures that, unless the transfer is avoided, the creditor would receive more than it would receive if paid to the extent provided by the distributive provisions of Chapter 7." *Merrill v. Abbott (In re Independent Clearing House Co.)*, 41 B.R. 985, 1013 (Bankr.D. Utah 1984), *rev'd in part on other grounds*, 62 B.R. 118 (D.Utah 1986); *Pereira v. United States (In re Rodriguez)*, *supra*, 50 B.R. at 583.

The evidence indicates total assets available for liquidation and distribution of $51,-300.00, as the Bank has correctly pointed out that Debtor has failed to include the personal property identified in Schedule B-3 in her calculations. Of this amount, $45,000.00 is the value of the Debtor's real property. The real property serves as security for Signal's claim, now in approximate amount of $23,122.13, and were the property sold, a broker's commission of 6%

($2,700.00) could be anticipated.[3] The Debtor would be entitled to her New York homestead exemption of $10,000.00, and thus, a gross amount of approximately $15,477.87 would be available for distribution to unsecured creditors. Estimated Trustee's compensation of $644.34 would be payable as an administrative expense, leaving approximately $14,833.53 available for distribution on the $13,097.20 of remaining claims.[4]

■ The Court recognizes its calculations do not take into account other administrative expenses which could be expected in a Chapter 7 case (e.g. Trustee's Attorney's fees), yet this recognition goes to the proof required of Debtor in sustaining its burden of proving the preferential transfer. In any event, the Court questions whether such other administrative expenses would erode the $1,736.03 cushion between the net available for distribution and the amount of remaining claims. What the evidence does reveal is that entry of the judgment on the Bank's behalf did not allow it to receive more than it would have in a Chapter 7 case, as 100 percent distribution on all claims could be anticipated.

Consequently, the Court does not consider the other arguments raised by the Bank, and the Debtor's motion to avoid the entry of the Bank's judgment as a preferential transfer pursuant to Code § 547(b) is denied.

IT IS SO ORDERED.

3. This percentage and amount is set forth in Debtor's informal computation.

4. The Court's analysis: