In re Ronald **BODENSTEIN** and Barbara Ann Bodenstein, Debtors.

John T. Lee, Plaintiff,

v.

**National Home Centers, Inc., Defendant.**

No. 96–81148.

United States Bankruptcy Court, W.D. Arkansas, Fayetteville Division.

May 3, 2000.

Ronald Boyer, Rogers, AR, for Plaintiff.

M. Todd Wood, Phyllis M. McKenzie, Little Rock, AR, for National Home Centers, Inc.

James Wyre, Fayetteville, AR, for Debtor.

### MEMORANDUM OPINION

ROBERT F. FUSSELL, Bankruptcy Judge.

Pending in the above-captioned adversary proceeding is Defendant National Home Centers, Inc. ("Defendant"; "NHC")'s April 21, 1999, Motion for Summary Judgment. The Motion asserts that this action is barred on statute of limitations grounds. For the reasons stated below, and by separate Order, Defendant's Motion is granted and this adversary proceeding is dismissed.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Further, the above proceeding is a core proceeding within 28 U.S.C. §§ 157(b)(1) and (b)(2)(K–O). The following Memorandum Opinion constitutes findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

## II. PROCEDURAL BACKGROUND

On November 21, 1996, Ronald Bodenstein and Barbara Ann Bodenstein ("Debtors") filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code. On Debtors' Schedules and Statements, they disclosed numerous prepetition transfers of mortgages and other interests to NHC. During the pendency of the Chapter 13 case, properties were sold and some of the proceeds disbursed to NHC, pursuant to this Court's Orders.

The Debtors' Chapter 13 Plan, as amended on March 26, 1998, was confirmed on March 27, 1998. However, unsecured creditor First National Bank of Springdale, among others, had filed a Motion to Convert the case to Chapter 7 on November 17, 1997. This Motion was finally granted on July 21, 1998 and Debtors' case was converted by Order dated August 21, 1998.

The Plaintiff in this action, John Terry Lee ("Plaintiff," "Chapter 7 Trustee") was appointed Chapter 7 Trustee on August 25, 1998. He filed the instant adversary preference action on February 12, 1999. Defendant NHC moved for Summary

Judgment on April 21, 1999, asserting statute of limitations grounds. A hearing was held on March 1, 2000, in Fayetteville, Arkansas, and the Court took the matter under advisement.

## III. FINDINGS OF FACT[1]

At the time Debtors filed their Chapter 13 petition, on November 21, 1996, Mr. Bodenstein was self-employed in the construction business. In schedules accompanying the petition, Debtors listed Defendant NHC as a creditor holding secured claims via mortgages on five "spec" houses located in Bella Vista, Arkansas.[2] In addition, on Schedule F, Debtors listed $172,-184.21 in unsecured debt to twenty-seven other creditors, most of whom had performed construction or real estate-related services for the Debtors.

In their accompanying Statement of Financial Affairs, regarding transfers made within ninety days before filing, Debtors represented that "[n]umerous payments fitting this category have been made, and due to their volume they are not available at filing[.] As Debtor intends to pay all creditors in full, it is expected that avoidance of preferences will not be an issue in this case."[3] Debtors repeated this assertion in their Narrative Statement of Plan, as to all nonpriority unsecured claims.[4]

Debtors further disclosed that NHC had "picked up certain property and [has] reduced [its] debt by that amount"; "[o]ther

returns have been made to NHC and are simply too numerous to prepare before filing as Debtor has done $400,000 in business with them over the last year."[5] In response to Item 6, "Assignments and Receiverships," Debtors stated that NHC "has been assigned $200,000 in mortgages on a debt of [$]190,000, which was to have satisfied their claim," which would "be paid upon sale of houses."[6]

At various times after Debtors filed their petition, during the pre-confirmation period, the Court entered Orders approving the sale of some of the properties at issue in this preference action.[7] For example, the Order of February 19, 1997, authorizing sale of the Castleford property, recited the following language:

2. All funds shall be paid to the Chapter 13 Trustee, David D. Coop. The record mortgage in favor of National Home Center shall not be paid at closing, nor shall it remain a lien ... after the closing....

3. The issue of preference has been raised as to the above mortgage[ ]. This issue is not dealt with by this order. If it is later determined that the mortgages in favor of ... National Home Center were not preferential, then National Home Center ... shall be paid for [its] mortgages by the Chapter 13 Trustee.... If the mortgages are avoided as pref-

---

1. The facts have been established via testimony at the March 1, 2000 hearing; in a Joint Stipulation of Facts dated February 29, 2000 (Parties' Joint Exhibit A, appended as Exhibit A to this Opinion); or they derive from the Court's files. It is a well-settled principle of law that a Court may take judicial notice of its own orders and of records in a case before the court, and of documents filed in another court. Fed.R.Evid. 201; *Elliott v. Papatones (In re Papatones)*, 143 F.3d 623, 624 (1st Cir.1998); *In re Henderson*, 197 B.R. 147, 156 (Bankr.N.D.Ala.1996).

2. These were introduced into evidence at the March 1, 2000 hearing as Plaintiff's Exhibit 1, Schedule D, Claims 8–12.

3. Plaintiff's Exhibit 1, Statement of Financial Affairs at 1.

4. Plaintiff's Exhibit 1, Narrative Statement at 3.

5. Statement of Financial Affairs Item 5, at 2.

6. Statement of Financial Affairs at 3.

7. Again, some of these include three of the five properties that Debtors had disclosed on Schedule D accompanying their petition in bankruptcy. The Orders approving the sales, including those disposing of the properties over which the subsequent APs were filed, were entered in the main bankruptcy case file, No. 96–81148.

erential ... then ... National Home Center shall be [a] general unsecured creditor[ ].... It is to be noted that all unsecured creditors are listed to be paid 100% of their allowed claims under the plan.

The Canova Place and St. Neots Lane properties were disposed of by Orders dated April 11, 1997 and April 18, 1997, respectively. These Orders both recited the following language:

2. The property [in question] ... is ordered to be sold ... with the mortgage lien[s] held by National Home Center ... to attach to the proceeds ... subject to the further order of this Court with regard to the validity and priority of said liens, with such proceeds to be paid to the Standing Chapter 13 Trustee, DAVID D. COOP, for disbursement pursuant to the further order of this Court.

On June 27, 1997, Debtors filed three adversary proceedings against NHC and others. These suits were over three of the properties at issue in the preference action currently before the Court.[8] The Court's records show that all three adversary proceedings were disposed of in short order.[9] On September 2, 1997, Consent Judgments were entered on all three properties.[10] Language contained in the Judgments all assigned NHC first priority and all contained the following sentence: "[T]here are no preference issues to litigate because no creditor should receive less than full payment on the allowed claims."[11]

A Plan filed July 10, 1997 contained a representation that "all creditors should be paid in full before the plan is in its 18th month." (¶ 2.) Paragraph Three of that Plan stated that "[u]nsecured creditors are to be paid 100%; Debtor hereby specifically waives any future right to modify to pay less than 100% to unsecured creditors."[12]

Finally, after numerous objections to claims and to confirmation were litigated and resolved, the Debtors' Plan, as amended on March 26, 1998, was confirmed on March 27, 1998. The confirmed Plan stated, in relevant part:[13]

7. Other Provisions:

a) Note that due to ... the fact that there are sufficient assets to pay all creditors 100% (which is as much or more than they would be paid in a Chapter 7 case), no preferences can be avoided in this case, and all prepetition mortgages will be honored and paid at future closings unless otherwise ordered.

b) In the event that all creditors are not paid 100% out of the properties sold by 4/1/98, all available causes of action under the Bankruptcy Code or case law including but not limited to preference avoidance actions shall be available to any party in interest who has legal standing to pursue such causes of action.

The March 27, 1998 Confirmation Order stated, in relevant part:

---

8. AP No. 97–8035 concerned the Castleford property. AP No. 97–8036 concerned the Canova property. AP No. 97–8037 concerned the St. Neots property.

9. In essence, no litigation was required beyond the Complaint and Summons, an Answer, and the above-noted Judgments. AP Nos. 97–8035 and 97–8037 closed on September 17, 1997; AP No. 97–8036 closed on September 30, 1997.

10. These Judgments were introduced into evidence at the March 1, 2000 hearing as Plaintiff's Exhibits 7–9.

11. Judgments ¶ 2.

12. This Plan was introduced into evidence at the March 1, 2000 hearing as Plaintiff's Exhibit 13. This language survived in the final plan. Plaintiff's Exhibit 17 ¶ 6.

13. Hereafter "Plan language," also reproduced in Joint Exhibit A ¶ 11, appended to this Opinion as Exhibit A.

3. If there are insufficient funds on hand to pay all creditors 100% after the April 1, 1998 deadline set for the sale of property of the estate, the joint motion by First National Bank of Springdale, the Bank of Bentonville, and Wood Truss Systems to convert the Debtors' Chapter 13 case to a cause under Chapter 7 shall be set by subsequent notice of the Court.

Debtors filed a feasibility report as ordered, on April 15, 1998.[14] In it, Debtors "candidly state[d]" that there were insufficient funds to meet the one-hundred percent promise.

This Court heard and granted First National Bank of Springdale's November 17, 1997 Motion to Convert on July 21, 1998. The case was converted from Chapter 13 to Chapter 7 by Order dated August 21, 1998 and noticed out as of August 25, 1998.[15]

At all times during the pendency of the Debtors' Chapter 13 bankruptcy, David Coop was Standing Chapter 13 Trustee for the Eastern and Western Districts of Arkansas.[16] Mr. Coop filed no preference actions.

Plaintiff John Terry Lee was appointed Chapter 7 Trustee on August 25, 1998. He conducted the first meeting of creditors on September 17, 1998.[17] He sued NHC in the instant adversary preference action on February 12, 1999. He amended the AP Complaint on June 2, 1999 to add an "equitable tolling" assertion in response to NHC's limitations defense.[18] Plaintiff's Second Amended Complaint, filed March 1, 2000, asserts that the Plan language attempting to preserve the preference actions also served to toll the statute of limitations.

On February 29, 2000, shortly before the March 1st hearing, the parties filed a Joint Stipulation of Undisputed Facts.[19] This Stipulation contained the Plan language attempting to preserve the preference actions. The parties further agreed that Debtors "did not conceal the prepetition transfers of mortgages to NHC, nor did the Debtors otherwise engage in fraudulent conduct regarding the prepetition transfers of the mortgages to NHC."[20]

---

14. The Report was entered into evidence at the March 1, 2000 hearing as Defendant's Exhibit 25.

15. The Notice was entered into evidence at the March 1, 2000 hearing as Defendant's Exhibit 15.

16. Mr. Coop was appointed Standing Chapter 13 Trustee on March 20, 1995; his appointment was ratified on March 31, 1995 (Exhibit 1 to Parties' Joint Exhibit A, appended as Exhibit A to this Opinion); and he was the Trustee at the time the petition in this case was filed, on November 21, 1996. Thus, Mr. Coop's appointment became effective as to the case at hand on the latter date.

17. Attorney William Clark testified at the March 1st hearing that he personally had discussed the preference issue with the Trustee at the time of the first meeting. Further, the parties have agreed that the preferences were never, neither then nor at any other time, concealed from the Trustee. (Joint Stipulation introduced into evidence at the March

1, 2000 hearing and appended to this Opinion as Exhibit A, ¶ 13.)

18. The Amendment further attached copies of the Court's prior Orders concerning the Canova property (¶¶ 5(a), (c)); the St. Neots property (¶¶ 5(b), (f)); and the Castleford property (¶ 5(d)).

19. This stipulation was introduced into evidence at the March 1, 2000 hearing as Joint Exhibit A and is appended to this Opinion as Exhibit A.

20. Joint Exhibit A ¶ 13, appended to this Opinion. Plaintiff's counsel forthrightly declined, when the facts did not support it, the principal legal theory available as to "equitable tolling": That the trustee, despite the exercise of due diligence, was prevented from asserting a cause of action because he remained unaware of that cause of action due to fraud. *Jobin v. Boryla (In re M & L Business Machine Co.)*, 75 F.3d 586 (10th Cir. 1996); *Moratzka v. Pomaville (In re Pomaville)*, 190 B.R. 632 (Bankr.D.Minn.1995).

## IV. POSITIONS OF THE PARTIES

NHC contends [21] that the limitations period within which preference actions may be brought, 11 U.S.C. § 546, commenced to run on November 21, 1996, the date the initial Chapter 13 petition was filed. The longer of two periods available under section 546 expired two years thereafter, on November 21, 1998. Eighty-three days after that date, however, on February 12, 1999, Plaintiff sued NHC on a preference theory. NHC concludes that because that suit was eighty-three days late, it was barred and, accordingly, summary judgment in NHC's favor should be granted.

NHC further contends [22] that the Plan language,[23] which attempted to preserve preference actions if all creditors were not paid one-hundred percent, contained no deadlines within which the actions must be filed. Because of the latter silence, NHC argues, the Plan language should be held to have no impact whatsoever on the statutory limitations period.

NHC further argues,[24] and Plaintiff agrees,[25] that the Debtors had never attempted to conceal any of the challenged transactions; on the contrary, they sought and got this Court's approval before going forward with any transfers of money to NHC.

Thus, NHC concludes, given that the limitations period was not tolled by agreement of the parties, nor by specific Court Order, nor by Debtors' misconduct, Plaintiff has failed to sustain his burden in opposing NHC's limitations Motion.

In Plaintiff's part, his March 24, 2000 Post–Trial brief consolidates the various alternative theories with which he has opposed NHC's contentions, as follows:

1. The Plaintiff–Chapter 7 Trustee had one full year after his appointment to sue, pursuant to 11 U.S.C. § 546(a)(1)(B); or

2. The Plan language, read as a contract between the parties, suspended the statute of limitations;[26] or

3. The Plan and surrounding proceedings had the effect of tolling the limitations period.

As to the latter theory, Counsel for Plaintiff argued orally, at the March 1, 2000 hearing, that if there is an order or proceeding that would prevent a person from bringing an action, the limitations period should be deemed tolled until the action became viable again. Specifically, Counsel urged that the statute of limitations in this case was tolled for around six months, starting from the date of the adversary-proceeding Consent Judgments of early September, 1997,[27] to around the date of the Plan and Confirmation Order promising one-hundred percent payout, in late March 1998. Throughout this period, counsel asserted, no person could have brought a preference action. Thus, counsel argued, the February 19, 1999 Complaint was well within the permissible two-year period.[28]

---

21. April 21, 1999 Motion for Summary Judgment.

22. October 12, 1999 Supplementary Brief.

23. Paragraph 7 of the March 27, 1998 confirmed Chapter 13 Plan, as reproduced in Joint Exhibit A ¶ 11, appended to this Opinion.

24. Reply Brief of June 7, 1999.

25. Joint Exhibit A ¶ 13, appended to this Opinion.

26. Plaintiff first advanced this defense in a letter brief dated October 12, 1999, in which he cited two elderly Arkansas cases for the proposition that, in the absence of a statute to the contrary, a provision in a contract may modify a codified limitations period.

27. The September 2, 1997 Consent Judgments, introduced into evidence as Plaintiff's Exhibits 7–9, assigned NHC first priority and all contained the following sentence: "[T]here are no preference issues to litigate because no creditor should receive less than full payment on the allowed claims."

28. The math underlying Counsel's argument appears to be that, by factoring in the six-month-period of tolling (September 1997 through April 1998) to the two-year statutory

## V. CONCLUSIONS OF LAW

Section 546 of the Bankruptcy Code provides, in the part relevant to this cause:

(a) An action ... may not be commenced after ...

    (1) the later of—

        (A) 2 years after the entry of the order for relief; or

        (B) 1 year after the appointment ... of the *first* trustee under section 702 ... or 1302 of this title if such appointment ... occurs before the expiration of the period specified in subparagraph (A).

11 U.S.C. § 546 (West 1999) (emphasis added).

The law applied to the facts of this case necessitates the following result:

The statute provides that preference actions must be instituted no later than two years after the date of appointment of the first trustee. The first Trustee in this case was Mr. Coop, the standing Chapter 13 Trustee, who held that position on November 21, 1996 when Debtors filed their Chapter 13 petition. The limitations period within which preference actions may be filed began to run on that date; the longer of two periods available under section 546 (two years from that date) expired on November 21, 1998.[29] Plaintiff–Trustee did not commence his preference action against NHC until February 12, 1999,

eighty-three days outside the limitations period. Thus, this preference suit is time-barred and NHC's Motion for Summary Judgment must be granted.

The rest of this Opinion assesses Plaintiff's defenses as unavailing.

### A. Chapter 7 Trustee Had One Year After His Appointment To Sue

■ Plaintiff argues that he brought this suit timely because section 546(a)(1)(B) furnishes him one full year after his appointment date on August 25, 1998.

Some authority for this position exists, but not in this judicial circuit and not under the currently controlling statute. Bankruptcy courts have reached contrary results in the past, but at least three circuit courts of appeals, including the Eighth Circuit, have held, since then, that section 546(a)'s language unambiguously provides for a *single* two-year time-frame. The period commences to run on appointment of the *first* trustee, during which two-year period that trustee, *or any subsequently appointed trustee,* can pursue avoidance actions. Once *any* trustee is appointed, the limitations period is set in motion. *Jobin v. Boryla (In re M & L Business Machine Co.),* 75 F.3d 586, 588, 589 (10th Cir.1996); *McCuskey v. Central Trailer Svcs., Ltd.,* 37 F.3d 1329, 1332 (8th Cir. 1994); *Ford v. Union Bank (In re San Joaquin Roast Beef)* 7 F.3d 1413, 1416 (9th Cir.1993).[30] *See also Mendelsohn v. Sequa*

---

period (which, absent tolling, would have ended on November 21, 1998), the cut-off date would be May 1999. Alternatively, in Plaintiff's March 24, 2000 Post–Trial Brief, Counsel urged that that tolling period should run from February 18, 1997 through April 1998. Brief at 3.

**29.** The November 21st cut-off date furnished Plaintiff a three-month window to sue after he was appointed on August 25, 1998. (Exhibit A, ¶ 13.) The facts of this case are what they are in this regard. If they had been different—that is, if Plaintiff Chapter 7 Trustee had been appointed *after* the limitations period had run—perhaps the law might have worked an unacceptable result. However, those are *not* the facts currently before this Court.

Thus, this is not the appropriate case in which to recraft the law's effect judicially, even assuming that this Court has the power to do so in the first instance.

**30.** The *Jobin* panel further noted:

We recognize that, in 1994, Congress amended § 546(a) to make it clear that the limitations period runs after the appointment of the first trustee. 11 U.S.C. § 546(a)(1)(B). In light of the fact that § 546(a)(1) was amended against the backdrop of inconsistent case law and that Congress chose to underscore the importance of a statute of limitations rather than the various roles of trustees under different chapters, we consider this 1994 amendment

*Financial Corp. (In re Frank Santora Equip. Corp.)*, 231 B.R. 486 (E.D.N.Y. 1999) (two-year period runs from appointment of Chapter 7 Trustee, after conversion from Chapter 11 case in which no trustee had been appointed); *Grabscheid v. Denbo Iron & Metal Co. (In re Luria Steel and Trading Corp.)*, 189 B.R. 418 (E.D.Ill.1995) (pre–1994 statute conferred on trustee the one-year period in that case, because case converted from a trustee-less Chapter 11 to Chapter 7 before expiration of the initial two-year period).

Thus, counting from the date the petition was filed on November 21, 1996, Plaintiff's February 12, 1999 suit was untimely filed. Plaintiff's theory to the contrary, furnishing the second Trustee another one-year period from his August 1998 appointment in which to sue, is not legally cognizable.

*B. The Plan Language Contractually Suspended the Statute of Limitations*

■ Plaintiff argues [31] that the Plan language [32] should be held to modify the codified limitations period.

■ For the argument to succeed in this case, the operative language must have made clear that the creditor was *expressly* waiving the statute of limitations defense, in exchange for either the Chapter 13 trustee's or the debtor's forbearance

from commencing suit for a certain time period. *Brandt v. Gelardi (In re Shape, Inc.)*, 138 B.R. 334, 337–38 (Bankr.D.Me. 1992) (parties' *express* agreement to that effect modified statutory limitations period).

The Plan language in the case at bar recites no such agreement. On the contrary, it is entirely silent on the subject of a limitations period.

However, the preference issue itself had been front and center throughout the proceedings, up to and including the March 27, 1998 Confirmation Order. This Order specifically contemplated that *within a matter of days of that Order*, the one-hundred percent payout might be seen not to succeed. If it did not—i.e., if the sale that was to take place on April 1st did not raise the hoped-for funds—the Court was to hear and decide creditors' pending motions to convert the case.[33] That is all the Order and Plan say on the point of preference actions, however. As to the limitations question, both are silent.[34]

Other testimony at the March 1, 2000 hearing confirmed that, far from expressly waiving or preserving a limitations defense, the parties simply did not contemplate it at all.

Gordon Long, NHC Credit Manager, vigorously denied that any agreement as to the limitations period ever existed.

---

to have been a clarification, rather than a change, in the law.

*Jobin*, 75 F.3d at 590 n. 6 (citations omitted).

**31.** October 12, 1999 letter brief

**32.** Exhibit A, ¶ 11.

**33.** The Order stated: "If there are insufficient funds on hand to pay all creditors 100% after the April 1, 1998 deadline set for the sale of property of the estate, the joint motion by First National Bank of Springdale, the Bank of Bentonville, and Wood Truss Systems to convert the Debtors' Chapter 13 case to a cause under Chapter 7 shall be set by subsequent notice of the Court." March 27, 1998 Confirmation Order ¶ 3. The Joint Motion to Convert was granted on July 21, 1998 and Debtors' case was converted from Chapter 13 to Chapter 7 by Order dated August 21, 1998.

**34.** Plainly, then, counsel for creditors First National Bank, Bank of Bentonville, and Wood Truss Systems had contemplated the prospect that the case would convert, as early as their having filed the Motion to Convert on November 17, 1997. On confirmation, had counsel been more vigilant in protecting their clients' interests, they could easily have negotiated Plan language that would have imposed an agreed-upon date certain beyond which preference suits would be barred. Had they done so, they would have greatly improved the likelihood that the Chapter 7 Trustee would have filed timely on conversion. *See Shape*, 138 B.R. at 335, 337–38 (court authorized tolling agreements, voluntarily agreed to in writing, to extend time to file preference actions; or, parties could have agreed to waive limitations defense in exchange for others' forbearance from commencing suit within certain time period).

Similarly, in response to a question on cross-examination whether there had been "any mention at all" of the limitations issue throughout the proceedings, James Wyre, Debtors' attorney, testified that it "had not been discussed."

Chris Lisle, attorney for Skeets Electric, another creditor that had received a potentially preferential payout, had been present at numerous hearings throughout the preconfirmation proceedings. He testified at the March 1st hearing that at no time had anyone ever discussed statute of limitations issues during the course of the proceedings. If they had, he stated, he never would have agreed to waive the defense.

William Clark, attorney for creditor First National Bank of Springdale, testified that after the case converted, he wrote a series of letters to the Chapter 7 Trustee requesting that the Trustee file a preference action timely.[35] Mr. Clark testified that he had been mindful at the time of writing that there had been no agreement as to the limitations period.[36]

Thus, the specificity necessary to find that the Plan language should modify the

statutory limitation simply does not exist in this record. Accordingly, Plaintiff's argument to the contrary cannot prevail.

*C. The Assertion of One–Hundred Percent Payout, and Orders Based on That Assertion, "Unequivocally Precluded" Any Preference Actions*

■ By representing that preference actions were "unequivocally precluded,"[37] Plaintiff's counsel overstates the matter. Rather, those parties who could have challenged the preferences simply declined to do so, in reliance on the one-hundred percent promise.

■ First, there "is absolutely no guarantee" that any Chapter 13 plan will result in successful one-hundred percent payout.[38] *In re Bennett,* 35 B.R. 357, 360 (Bankr.N.D.Ill.1984). Accordingly, challenges to transfers can be brought even notwithstanding a one-hundred percent promise. Thus, the *Bennett* court granted the Chapter 13 debtor's motion for turnover under such circumstances, holding that the involuntary transfer was a *voidable* preference because the creditor would

**35.** The letters were dated August 31, 1998; October 19, 1998; and November 4, 1998. Defendant's Exhibits 22–24. The October 19th letter asks whether the Trustee had filed any preference actions. The November 4th letter asks the Trustee to call *"as soon as possible"* to inform counsel whether the Trustee had brought fraudulent transfer challenges. Exhibit 24 (emphasis in original).

**36.** Attorney Steven Zega, who represented Wood Truss Systems, another creditor, also wrote a letter to the Chapter 7 Trustee on September 28, 1998, Defendant's Exhibit 26. This letter stated that Zega was "very interested in having [the Trustee] pursue a preference action." Zega testified at the March 1st hearing, and a handwritten notation at the bottom of the September 28th letter bears out his testimony, that the Trustee responded that he was interested in pursuing a preference action but that he first needed to review the Chapter 13 case files as to the property sales and payment of proceeds generated from them. Mr. Zega then wrote another letter to the Chapter 7 Trustee's attorney, on December 21, 1998, Defendant's Exhibit 28, stating

that "about a month ago," Zega had understood the Trustee to have hired counsel to bring the preference action. A supreme irony in this instance is that the statute of limitations period had expired exactly one month to the very day prior to this letter, on November 21, 1998.

**37.** Plaintiff's March 24, 2000 Post–Trial Brief at 3.

**38.** William Clark, counsel for Creditor First National Bank of Springdale, recognized this plain truth when he testified at the March 1, 2000 hearing that his hope for one-hundred percent payout in the case at bar may have been "naive." Similarly, NHC argues in its April 13, 2000 Post-trial Brief at 16: "Certainly at the beginning of the case the picture was much more optimistic than now but an optimistic forecast [is only that].... If the result of the sales ... had been known to the Debtors earlier or had the Debtors been aware of the additional liabilities they were to incur as a result of the Internal Revenue Services' assessments perhaps the result would have been different."

receive more than it would have under a Chapter 7.

In the same vein, when there was "potential" for a result on conversion different from one-hundred percent payout, courts have held such transactions voidable but have stayed avoidance "until the Chapter 13 Plan [was] fully administered *or* the petition [was] converted to a Chapter 7...." *Marsh v. First National Bank (In re Marsh)*, 28 B.R. 270, 272 (Bankr. S.D.Ohio 1983) (emphasis added) (voidability found when debtor's exemption not impaired under Chapter 13, but "potential" for impairment existed if case were to convert). *See also In re Hobaica*, 77 B.R. 392, 394 (Bankr.N.D.N.Y.1987) (whenever hypothetical distribution reveals preferred creditor would get less than one-hundred percent payout, prepetition transfer is voidable).

Otherwise, courts seem rarely to permit equitable tolling of the statute of limitations, absent the kind of "extraordinary circumstances" that existed in *Jobin*, 7 F.3d 586. There, the bankruptcy court had expressly ruled that the trustee had no standing to raise an avoidance suit against a plaintiff in a declaratory action; the trustee's timely appeal of that ruling was pending when the limitations period ran. This, the court of appeals held, was a circumstance sufficiently "extraordinary" to toll the statute.

In the case at hand and *unlike* in *Jobin*, however, the Chapter 13 Trustee *could* have brought such an action. The Circuit Court of Appeals for the Eighth Circuit has found that the Code expressly confers standing on trustees, which standing can be extended to debtors in some cases. 11 U.S.C. § 548(a)(2)(B)(I) (trustee's avoidance power applied to transfers made while insolvent); § 522(h) (extended to debtors in limited circumstances); *Wade v. Midwest Acceptance Corp. (In re Wade)*, 219 B.R. 815, 819 (8th Cir. BAP 1998); *LaBarge v. Benda (In re Merrifield)*, 214 B.R. 362 (8th Cir.1997). Thus, either the Chapter 13 Trustee or the Debtors had standing to lodge a preference suit during the pendency of the Chapter 13 case.

Notwithstanding the law being settled on that point, the Chapter 13 Trustee's representative testified at the March 1st hearing to the Trustee's Office's position that only the Debtor, and not the Trustee, had such standing.

■ Nevertheless, as a practical matter, the Chapter 13 Trustee was the only one with standing to sue. Generally speaking, creditors do not have standing to challenge a preference. *Cambridge Tempositions, Inc. v. Cassis (In re Cassis)*, 220 B.R. 979, 983 (Bankr.N.D.Iowa 1998) (trustee, not creditor, is appropriate party to weigh merits of preference action against costs and benefits to estate).[39]

---

**39.** The Eighth Circuit has noted that the "courts in this circuit have consistently followed this rule and have held that individual creditors ... do not have standing to assert claims of voidable transfers." *Nangle v. Lauer (In re Lauer)*, 98 F.3d 378, 388 (8th Cir.1996) (limited partner lacked standing to avoid Chapter 7 debtor's prepetition transfer), *quoted in Cassis*, 220 B.R. at 983. *Lauer* did note in *dicta* that there is an exception to that rule, when there is "evidence that the trustee cannot be relied upon to assert such claims." *Lauer*, 98 F.3d at 388. In the latter situation, the Court of Appeals for the Sixth Circuit has ruled that a single creditor in a Chapter 11 case had "derivative standing" to initiate an action to avoid a preferential or fraudulent transfer, instead of the debtor-in-possession. *Canadian Pacific Forest Products Ltd. v. J.D.* *Irving Ltd. (In re Gibson Group, Inc.)*, 66 F.3d 1436 (6th Cir.1995). The *Gibson Group* court reviewed cases finding to the same effect in the Second, Third, Fifth, and Seventh Circuits. *In re Xonics Photochemical, Inc.*, 841 F.2d 198 (7th Cir.1988); *Louisiana World Exposition v. Federal Ins. Co.*, 858 F.2d 233 (5th Cir.1988); *Equitable Gas Co. v. Equibank N.A. (In re McKeesport Steel Castings Co.)*, 799 F.2d 91 (3rd Cir.1986); *Unsecured Creditors Com'ee v. Noyes (In re STN Enterprises, Inc.)*, 779 F.2d 901 (2nd Cir.1985). The majority of these cases, if not all of them, however, were brought under Chapter 11. No previous case appears to have addressed the question whether the same reasoning should apply to a Chapter 13. At any rate, the existing line of authority certainly was not brought to this Court's attention by the parties in this case.

As to the Debtors, they transferred the interests to NHC voluntarily, so they would not have been likely to sue either.[40]

At the March 1st hearing, creditors' attorneys testified in one voice that from their point of view, any attempts to alter the situation, other than the exertion of mere persuasion, would have been unlikely to succeed.

Mr. Clark testified that he did not object to the Chapter 13 Plan because it would have been a "waste of time": there was "no reason" to do so, in light of the one-hundred percent promise.

Debtors' counsel James Wyre testified that the parties involved in the adversary proceedings consented to entry of the Consent Judgments because, in light of the one-hundred percent promise, there would have been "no point" in doing otherwise.

The Chapter 13 Trustee's representative testified to the same effect.

So did Steve Zega, another creditors' attorney, who stated that any effort of his to urge a preference suit, other than the letter-writing that he did do,[41] would have been a "waste of [his] client's time" and simply not worth it, to "chase down a $1300.00 claim."

Chris Lisle, whose creditor-client had received potentially preferential payments, stated that it was "against his client's interest" to pursue a preference action; this would have been the Trustee's responsibility.

Mr. Clark testified that his, or his and other creditors' counsel's, solution to the situation was to insist on insertion of the language in the Plan that "[u]nsecured creditors are to be paid 100%; Debtor hereby specifically waives any future right to modify to pay less than 100% to unsecured creditors."[42] The language in the Confirmation Order stated that "preference avoidance actions shall be available to any party ... who has legal standing to pursue [them]...." Further, the Order states that if the one-hundred percent promise failed, the Court would hear the creditors' Motion to Convert the case to Chapter 7.[43]

So no-one with standing was "unequivocally precluded" from suing during the pendency of the Chapter 13 case, as Plaintiff would have it. Rather, the parties unanimously decided not to act. Thus, in light of this inaction, the record further establishes[44] that every conceivable effort was made to *preserve* the preference action during the pendency of the Chapter 13 case, not to preclude it.

■ The ultimate decisive fact in this case is that, on conversion, Plaintiff Chapter 7 Trustee did not timely sue on the preference issue, despite having had around three months in which to do so. The Trustee now asks this Court to re-

For the latter reason, this Court refrains from deciding the question. Moreover, the doctrine of "derivative standing" is judicially created. Without more definitive guidance from the Eighth Circuit Court of Appeals, this Court is reluctant to import such a doctrine. Were Congress to incorporate the doctrine into the statute, there would be no question to litigate—but this, too, has not yet occurred.

40. The quick disposal of the prior adversary proceedings, with Debtors as Plaintiffs, bears out this point. Additionally, Debtors' counsel Wyre testified at the March 1st hearing that preference actions were not in the Debtors' interest; the Debtors preferred to "leave that [course of action] up to the trustee or the creditors who had standing to do so."

41. *Supra* n. 36.

42. Plan confirmed March 27, 1998 ¶ 6; Plaintiff's Exhibit 17.

43. March 27, 1998 Confirmation Order ¶ 3; Joint Stipulation, Exhibit A ¶ 11.

44. See language in February 19, 1997 sale Orders (preference issue raised but not dealt with; if NHC mortgages avoided later as preferential, then NHC to become general unsecured creditor); and in September 2, 1997 AP Consent Judgments (NHC assigned first priority; no preference issues because of one-hundred percent promise).

write the statute to permit such untimeliness. This the Court cannot do.

In conclusion, on the facts of this case the Code is clear in providing no more than two years after the filing of the petition in which to pursue preference avoidance actions. The Chapter 7 Trustee filed eighty-three days after the two-year period expired. The exception to this rule, available in cases of debtor misconduct, does not apply to this case. Further, there was no legally cognizable agreement between the parties to suspend the running of the statutory period. Lastly, there was no authoritative prohibition on suing, which, on other facts, might otherwise be deemed to toll the limitation. Thus, this preference action is time-barred; NHC's Motion for Summary Judgment is granted; and this adversary proceeding is dismissed.

IT IS SO ORDERED.

## APPENDIX

### *EXHIBIT "A," MEMORANDUM OPINION AND ORDER*

### *JOINT STIPULATION OF UNDISPUTED FACTS*

Plaintiff John T. Lee, the Chapter 7 Trustee, and Defendant National Home Centers, Inc. ("NHC") submit the following Joint Stipulation of Undisputed Facts as to which the parties agree there is no genuine issue to be tried:

1. On November 21, 1996, Ronald Bodenstein and Barbara Ann Bodenstein (the "Debtors") filed a voluntary petition for relief under the provisions of Chapter 13 of the United States Bankruptcy Code.

2. A true and correct copy of the Designation of Chapter 13 Standing Trustee under 28 U.S.C. § 586(b) and Ratification and Approval of Standing Trustee and Fixing of Compensation Under 28 U.S.C. § 586(e) is attached hereto as Exhibit 1.

3. As of the date the Debtors filed their petition, David D. Coop was the Standing Trustee in all Chapter 13 cases in the Eastern and Western Districts of Arkansas.

4. David D. Coop served as Trustee in the Debtors' Chapter 13 case.

5. David D. Coop did not file a preference action against NHC during the 21 months he served as Chapter 13 Trustee in this case.

6. This case was subsequently converted to a proceeding under Chapter 7 of the United States Bankruptcy Code on August 21, 1998.

7. John T. Lee ("Chapter 7 Trustee") was appointed interim trustee for the Chapter 7 case on August 25, 1998.

8. The first meeting of creditors was held in the Chapter 7 case on September 17, 1998, and the Debtors were present and examined.

9. The Chapter 7 Trustee was present at the first meeting of creditors on September 17, 1998, and conducted the first meeting of creditors.

10. On February 12, 1999, the Chapter 7 Trustee filed this adversary proceeding pursuant to 11 U.S.C. § 547 against NHC seeking to set aside alleged preferential transfers.

11. The Debtors' Chapter 13 plan dated March 26, 1998, and confirmed by order of the Court on March 27, 1998, contained the following language:

OTHER PROVISIONS:

. . .

(b) In the event that all creditors are not paid 100% out of the properties sold by 4/1/98, all available causes of action under the Bankruptcy Code or case law, including but not limited to preference avoidance actions, shall be available to any party in interest who has legal standing to pursue such causes of action.

12. The Chapter 7 Trustee bears the burden of proving the statute of limitations

period for the filing of the preference avoidance action has been tolled.

13. The parties agree that the Debtors did not conceal the prepetition transfers of the mortgages to NHC, nor did the Debtors otherwise engage in fraudulent conduct regarding the prepetition transfers of the mortgages to NHC.