In re CHATTANOOGA WHOLESALE ANTIQUES, INC., Debtor.

C. Kenneth STILL, Trustee,
Plaintiff–Appellant/Cross–Appellee,

v.

ROSSVILLE BANK,
Defendant–Appellee/Cross–Appellant.

Nos. 89–6416, 89–6417.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 23, 1991.

Decided April 10, 1991.

---

Fred T. Hanzelik, James A. Fields (argued), Hanzelik & Associates, Chattanooga, Tenn., for defendant-appellee/cross-appellant.

Harold L. North, Jr. (argued), Shumacker & Thompson, Chattanooga, Tenn., for plaintiff-appellant/cross-appellee.

Before MARTIN and KRUPANSKY, Circuit Judges, and LIVELY, Senior Circuit Judge.

LIVELY, Senior Circuit Judge.

The appeal and cross-appeal in this bankruptcy case involve a Chapter 7 trustee's right to recover allegedly preferential and unauthorized payments made by the debtor in possession under Chapter 11 prior to conversion of the case to a Chapter 7 proceeding.

Chattanooga Wholesale Antiques, Inc. (the debtor) filed bankruptcy under Chapter 11. Within ninety days prior to filing the petition, the debtor made two payments on promissory notes to the appellee Rossville Bank (the bank) totalling $10,571. After filing the petition, but prior to confirmation of the debtor's Chapter 11 plan, the debtor made a single payment of $4,061 to the bank. After confirmation of the debtor's plan of reorganization, the debtor made several payments to the bank totalling $30,600, which were expressly required under the confirmed plan.

After conversion to Chapter 7 a trustee was appointed who filed suit against the bank seeking to recover the pre-petition payments as avoidable preferences under 11 U.S.C. § 547(b) and seeking to recover all post-petition payments as unauthorized payments under 11 U.S.C. § 549(a). The bank now appeals the district court's decision affirming the bankruptcy court's ruling that the pre-petition payments could be avoided as preferential transfers under § 547(b). The bank also appeals the district court's decision which reversed the bankruptcy court and determined that the $4,061 post-petition, pre-confirmation payment was unauthorized and could be recovered by the trustee. Finally, the trustee appeals the decision of the district court which affirmed the bankruptcy court's ruling that the $30,600 in post-confirmation payments were authorized and could not be recovered.

I.

A.

The debtor filed its petition in bankruptcy under Chapter 11 on October 7, 1982, and thereafter continued to operate the business as a debtor in possession. When the Chapter 11 petition was filed, the debtor's schedule A–3 indicated an unsecured debt to the bank in the amount of $72,000. The debt was not listed as disputed, contingent or unliquidated. This debt stemmed from two promissory notes that were personally guaranteed by James H. Wilkinson, president of the debtor corporation. The notes recited "purchase inventory continuing guarantee-operating funds" of the debtor as security.

Less than ninety days prior to the petition, the debtor had issued two checks to the bank totalling $10,571.

Fourteen days after the petition was filed, the debtor issued a third check to the bank in the amount of $4,061, which amount was also applied against the same antecedent debt.

On December 22, 1982, the debtor and the bank entered into a "Stipulation Authorizing Debtor to Use Cash Collateral and for Adequate Protection." This stipulation recited that the bank held a valid security interest in the debtor's cash collateral to secure an outstanding obligation to the bank of $75,490. The stipulation permitted the debtor to use its pre-petition cash account (which totalled $128.83 at filing of the petition as per the debtor's schedule B–2) and all cash generated by the debtor during post-petition operation of the debtor's business. In return, the bank received a valid and enforceable first lien and security interest in the debtor's inventory and the debtor obligated itself to pay the outstanding loan balance at a rate of $1,800 per month plus 14% interest per annum. The bankruptcy court approved the stipulation and entered an order implementing the agreement on December 23, 1982.

On January 7, 1983, the debtor filed its Disclosure and Solicitations Statement and its Plan of Reorganization. Article I of the plan established March 23, 1983, as the last date to file claims. Article II of the plan defined "Secured Claims" as "[a]llowed claims of creditors *to the extent of a perfected lien* on property or interest in the estate of the Debtor, ..." (emphasis supplied). Although the bank never perfected its inventory lien under Tennessee law, Article III of the plan listed the bank as a secured creditor with a security interest in inventory and provided that the bank's claim would be paid in monthly installments as set forth in the stipulation. The debtor's plan was transmitted to creditors and after notice and hearing the bankruptcy court determined that the plan had been

accepted in writing by those creditors whose acceptance was required by law. An order confirming the plan was entered by the bankruptcy court on April 20, 1983. Payments to the bank continued under the confirmed plan until conversion of the case to Chapter 7 in August 1984. Post-confirmation payments totalled $30,600. The bank filed its proof of claim on September 1, 1983, more than five months after the bar date established in the confirmed plan.

Following conversion of the case to Chapter 7, C. Kenneth Still, who was the disbursing agent under the confirmed Chapter 11 plan, was appointed trustee in bankruptcy. The trustee initiated an adversary proceeding against the bank claiming the bank's security interest in the debtor's inventory had not been perfected and was therefore subject to the trustee's avoidance powers in the Chapter 7 proceedings. The bankruptcy court issued an order on December 10, 1984, stating that the bank's claimed lien was unperfected under Tennessee law and thus avoided by the trustee. Immediately thereafter, the trustee filed another action in bankruptcy court seeking to recover all pre-petition and post-petition payments to the bank under §§ 547(b) and 549(a).

### B.

After submission of briefs by the parties and a trial, the bankruptcy court issued an order denying the trustee recovery of all pre-petition and post-petition payments. As to the two pre-petition payments totalling $10,571 made within 90 days of the petition, the bankruptcy court determined that the trustee failed to show that the bank received more than it would have received had the case been commenced under Chapter 7 and the assets liquidated at the time of the original petition. Thus,

these payments were not recoverable under § 547(b)[1]. As to the $4,061 post-petition, pre-confirmation payment and the $30,600 in payments under the confirmed plan, the bankruptcy court determined that all of these payments were authorized and not recoverable under § 549(a)[2]. Finally, the bankruptcy court ruled that its reconsideration of the bank's claim pursuant to § 502(j) in its order of December 10, 1984, and the resultant reclassification of the bank's claim as unsecured, did not permit the trustee to recover payments already made under the confirmed plan. The trustee moved for reconsideration.

The bankruptcy court denied the trustee's motion for reconsideration as to all post-petition payments, but granted the motion to the extent of ruling that the evidence respecting the pre-petition payments should be reopened to determine whether the court should have taken judicial notice of the debtor's schedules to satisfy the "more than" requirement of § 547(b)(5). After a second hearing pursuant to the order reopening proof, the bankruptcy court determined that § 547(b)(5) had been satisfied, thus permitting the trustee to recover the $10,571 in pre-petition payments as avoidable preferences. The order also allowed prejudgment interest from the date of the trustee's complaint. The bank then appealed, and the trustee cross-appealed, to the district court.

The district court issued an opinion and order holding that the bankruptcy court's decision to reopen proof as to the § 547(b)(5) claim did not constitute an abuse of discretion, and it affirmed the bankruptcy court's order determining that § 547(b)(5) had been satisfied by the new evidence and allowing the trustee to recover the $10,571 in pre-petition payments. The district court reversed the bankruptcy

---

1. The fifth element of 11 U.S.C. § 547(b) requires a trustee to demonstrate the following:

    (5) that [the transfer] enables such creditor to receive more than such creditor would receive if—
    (A) the case were a case under chapter 7 of this title;
    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
    This is known as the "more than" test.

2. 11 U.S.C. § 549(a) permits a trustee to avoid a post-petition transfer of property of the estate that occurs after commencement of the case and is not authorized by the Bankruptcy Code or by the Court.

court's determination that the $4,061 post-petition, pre-confirmation payment was not recoverable by the trustee. The district court noted that this payment was made prior to the order of December 23, 1983, authorizing adequate protection and also prior to confirmation of the debtor's plan. Therefore, this payment to the bank was not authorized either by the court or by Title 11 and was recoverable by the trustee under § 549(a). The district court affirmed the bankruptcy court's determination that the $30,600 in post-confirmation payments were authorized by the debtor's confirmed plan and therefore not recoverable by the trustee. The district court further affirmed the bankruptcy court's ruling that reconsideration of the bank's claim under § 502(j) did not mandate recovery of payments made under the confirmed plan.

## II.

The trustee appeals from the judgment of the district court to the extent it held that the $30,600 in monthly payments to the bank under the confirmed plan are not recoverable. Although the bank never perfected its security interest in the debtor's inventory, the confirmed plan treated the bank as a secured creditor and provided for the monthly payments. On this basis, the district court held that these payments were authorized by the bankruptcy court's order confirming the debtor's plan. Thus, they did not come within § 549(a)'s definition of "not authorized" and therefore avoidable.

## A.

The parties have focused their arguments on the question of whether confirmation of a plan that treats a debt as secured provides authorization for so treating it when in fact the security interest for the debt has not been perfected. We believe this approach puts the cart before the horse.

■ Section 549(a) provides for the avoidance of "a transfer of property of the estate." Under § 1141(b), however, "the confirmation of a plan vests all of the property of the estate in the debtor." Thus, at the time the monthly payments were made to the bank the property of the estate had been revested in the debtor, as debtor in possession, and was no longer "property of the estate." *In re Parks Jaggers Aerospace Co.*, 100 B.R. 594, 595 (Bankr.M.D. Fla.1989); *In re Ford*, 61 B.R. 913, 917 (Bankr.W.D.Wis.1986). As the Court stated in *Ford*, upon confirmation of a Chapter 11 plan, unless there are contrary provisions, the property of the estate revests in the debtor "along with normal ownership rights." *Id.* at 917. The court continued, "Section 549(a) expressly applies only to the property of the estate. Since all of the debtor's property revested it is clear that the trustee may not avoid any transfers which occurred after confirmation of the debtor's plan." There were no contrary provisions in the present case.

■ Even if the order of confirmation did not revest the property in the debtor, however, the trustee's arguments for nullifying this specific provision of the confirmed plan would be unavailing. The mischaracterization of the bank's debt in the plan should have been raised at the confirmation hearing. The same is true of the trustee's contention that the bank failed to file its claim before the cutoff date. Furthermore, the argument concerning timely filing of the claim is settled by another Bankruptcy Code provision. The bank's claim was "deemed filed" because it appeared in the schedules filed with the Chapter 11 petition and was not scheduled as "disputed, contingent or unliquidated." 11 U.S.C. § 1111(a). The trustee relies on *In re Simmons*, 765 F.2d 547, 551 (5th Cir. 1985) for the proposition that § 1111(a) does not apply because the plan treated the bank's debt as secured whereas the schedule listed it as unsecured. *Simmons* does not hold that § 1111(a) is inapplicable to claims that have contrary classifications in the debtor's schedules and in the reorganization plan. The bank's claim was not listed as "disputed," "contingent" or "unliquidated;" therefore, it was deemed filed under § 1111(a).

## B.

The trustee also seeks to recover the post-confirmation payments to the bank by attacking the propriety of the confirmed plan. This approach is foreclosed by the Bankruptcy Code and by case law and authoritative commentary.

Section 1141 is entitled "Effect of confirmation." Section 1141(a) lists categories of parties who are bound by the terms of a confirmed plan. The effect of confirmation under the plain language of § 1141(a) is to bind all parties to the terms of a plan of reorganization. 5 L. King, Collier on Bankruptcy, ¶ 1141.01[1] 15th Ed. (1990). This court has applied § 1141(a) to deny interest payments to creditors who had accepted a plan providing for no interest payments. The issue arose when an unanticipated structured settlement of a tort claim of the debtor occurred months after the plan was confirmed and provided funds sufficient for a 100% distribution. Citing § 1141(a), we held the provision of the confirmed plan binding and stated, "The unsecured creditors are simply too late in making their claim for postpetition interest." *In re Kentucky Lumber Co.*, 860 F.2d 674, 679 (6th Cir.1988).

The trustee does not contend that notice was not given to the required parties or that the confirmation proceedings were otherwise flawed. He argues, instead, that it is inequitable for the bank, which had not perfected its security interest, to receive the benefit of a plan that treated it as a secured creditor. Nevertheless, the parties most affected by the plan—the unsecured creditors—accepted the plan. Confirmation of a plan of reorganization by the bankruptcy court has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings. *Miller v. Meinhard–Commercial Corp.*, 462 F.2d 358, 360 (5th Cir.1972); *cf. Stoll v. Gottlieb*, 305 U.S. 165, 170–71, 59 S.Ct. 134, 136–37, 83 L.Ed. 104 (1938). As *Collier* points out, § 1141(a) of the Bankruptcy Code has the same effect as the sections of the Bankruptcy Act that were in issue in *Miller* and *Stoll*. 5 L. King, Collier on Bankruptcy, ¶ 1141.01[1] (15th Ed.1990).

Without this rule there would be no finality to confirmed plans. All of the payments were made while the debtor was operating under the Chapter 11 plan and before conversion to Chapter 7. As stated by the court in *In re Reef Petroleum Corp.*, 99 B.R. 355 (Bankr.W.D.Mich.1989):

> Payments made during an ongoing Chapter 11 should not be "reeled in." As long as payments are made as required by the plan, and the plan remains in effect, a party can rely on the payments being final. However, once the plan is aborted, and a case is converted to Chapter 7, the parties must revert to Chapter 7 to distribute any remaining property of the estate.

*Id.* at 359. This is precisely the effect of the ruling of the bankruptcy court and the district court in the present case.

## C.

Finally, the trustee argues that he is entitled to recover the post-confirmation payments under § 502(j). At the time of the decision by the bankruptcy court, § 502(j) provided, in its entirety:

> Before a case is closed, a claim that has been allowed may be reconsidered for cause, and reallowed or disallowed according to the equities of the case.

On its face, § 502(j) does not provide for the recovery of payments made under a confirmed plan. It merely provides for the reconsideration of claims, and use of "may" indicates a rule of discretion rather than a mandatory requirement. The current version of § 502(j) has, since 1984, contained the following language: "This subsection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer to such creditor." 11 U.S.C. § 502(j) (1988).

The "trustee's right to recover," referred to in the 1984 amendment, was derived from § 57(*l*) of the old Bankruptcy Act, 11 U.S.C. § 93(*l*) (1976), which expressly provided for the trustee's recovery of erroneously paid dividends. It has been held that § 57(*l*) did not give a trustee an absolute

right to recover an excess dividend. Rather, as provided in the preceding subsection 57(k), a bankruptcy court was required to consider the equities of the particular case in amending an order of payment. *In re Jules Meyers Pontiac,* 779 F.2d 480, 482 (9th Cir.1985). The court in *Meyers Pontiac* concluded further that the balancing of equities is a factual process and the determination regarding repayment resulting from the balancing process is a factual one. Thus, even when the underlying facts are undisputed a decision ordering repayment is reviewed under a clearly erroneous standard. *Id.* at 482.

■ The bankruptcy court in the present case articulated several reasons for denying the trustee's demand to recapture the post-confirmation payments. The court did not balance the equities because it concluded, as a matter of law, that § 502(j), both as it stood in 1982 and as it was amended in 1984, did not permit recovery of post-confirmation payments in the present case. The bankruptcy court relied upon the fact that the confirmation of a plan revests the property of the estate in the debtor and that § 549(a) limits the right of a trustee's recovery to transfers of estate property. When property revests in the debtor, the binding effect of the confirmation order as provided in § 1141(a) would be rendered meaningless if a trustee could recapture payments made pursuant to the order. Section 502(j) was not intended to provide an avenue of attack on the finality of a binding order of confirmation. We agree with the bankruptcy court and the district court that the trustee is not entitled to recover the post-confirmation payments on the basis of § 502(j).

### III.

The bank appeals from two rulings contained in the district court judgment.

### A.

The bank contends that the bankruptcy court erred in reopening the proof with respect to the pre-petition payments of $10,571. In reopening the proof after first ruling that these payments could not be avoided by the trustee, the bankruptcy court concluded that it had not considered whether it should have taken into account the debtor's schedules in determining whether the requirements for avoidance set forth in § 547(b)(5) had been satisfied. Section 547(b)(5) permits avoidance by a trustee of a transfer that enables a creditor to receive more than it would receive if the case were a Chapter 7 case and the transfer had not been made. These provisions require the bankruptcy court to construct a "hypothetical Chapter 7 case;" i.e., to determine what the creditor would have received in a liquidation.

■ The district court held that the bankruptcy court did not abuse its discretion in reopening this issue. We agree. There is no doubt that a decision to reopen the evidence is committed to the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 331, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Noble v. National Mines Corp.,* 774 F.2d 144, 149 (6th Cir.1985). We find no abuse of discretion. The question of the court's reliance on the schedules in making § 547(b)(5) "more than" determination had not been substantially briefed or argued prior to the first order and the bankruptcy court felt that the matter "should be decided upon a complete record, after the parties have argued the issues and had the opportunity to present evidence as to the admissibility of the schedules or other evidence."

■ The bankruptcy court also found that this court had clarified the § 547(b)(5) requirement in *In re Tenna Corp.,* 801 F.2d 819 (6th Cir.1986), decided after trial but before the bankruptcy court's ruling. A change in legal standards is a proper ground for reopening proof. *Skehan v. Board of Trustees of Bloomsburg State College,* 590 F.2d 470, 479 (3rd Cir.1978). We do not believe it was necessary to rely on *In re Tenna* in order to reopen the evidence in this case. Our decision in that case merely clarified the time at which the "more than" determination is to be made; the requirement that such a determination must be made was not an issue. Neverthe-

less, reopening for the purpose of making a more complete record was not an abuse of discretion. We also agree with the district court's conclusion that the bank was not prejudiced by the reopening.

■ The bank also argues that, assuming the reopening was not an abuse of discretion, the trustee failed to satisfy the § 547(b)(5) requirement even when the additional evidence was considered. The record does not support this argument. After reopening, the president of the debtor corporation and the trustee produced testimony that showed conclusively that the liquidation value of the debtor's assets at the time the bankruptcy petition was filed (the time prescribed by *In re Tenna* for making the determination) was insufficient to provide a 100% distribution to creditors if the case had been commenced under Chapter 7. Unless the estate is sufficient to provide a 100% distribution, any unsecured creditor (as the bank must be treated prior to confirmation of the plan) who receives a payment during the preference period is in a position to receive more than it would have received under a Chapter 7 liquidation. *In re Lawrence*, 82 B.R. 157, 160 (Bankr.M.D.Ga.1988). Thus, the "more than" requirement of the statute is satisfied in constructing the § 547(b)(5) hypothetical Chapter 7 distribution. We affirm the order directing recovery of the pre-petition payments as avoidable preferences.

■ The district court affirmed the bankruptcy court's allowance of prejudgment interest from the date of the trustee's complaint. The bankruptcy court did not abuse or exceed its discretion in allowing prejudgment interest. The bank had the use of money it was not entitled to receive. Under these circumstances, it was proper to require the bank to pay interest to the trustee.

### B.

After the Chapter 11 petition was filed, but before confirmation of the plan of reorganization, the debtor made a payment to the bank of $4,061 on the same antecedent debt involved in the pre-petition payments. The bankruptcy court held that this pay-

ment was authorized under § 549(a). The district court reversed this order and held that the trustee was entitled to recover the payment as an unauthorized transfer of estate property after commencement of the bankruptcy case. We agree with the district court.

■ The trustee satisfied the three requirements of § 549(a) for avoiding this transfer: (1) the transfer involved property of the estate, as it occurred before confirmation of the plan revested the estate property in the debtor; (2) the transfer occurred after commencement of the case; and, (3) the transfer was not authorized by any provision of the Bankruptcy Code or by the court. No order of the court authorized this payment; it was made long before entry of either the adequate protection order or the order of confirmation. Likewise, no provision of the Bankruptcy Code authorized the payment. The bank was listed as an unsecured creditor when the payment was made. To hold that this payment was authorized by §§ 1107 and 1108, which permit a debtor in possession to continue to operate the bankrupt business, would clothe the debtor with power to treat unsecured creditors differently. Such a holding would run counter to one of the fundamental purposes of bankruptcy—equal treatment of unsecured creditors.

### CONCLUSION

The judgment of the district court is affirmed on both appeal and cross-appeal. The parties will bear their own costs of this appeal.