**In re Roderick Bernard JOHNSON and Misty Dawn Johnson, Debtors.**

**Henry E. Hildebrand, III, Trustee, Plaintiff,**

**v.**

**Hays Imports, Inc. d/b/a Hays Mitsubishi (substituted for G.E. Capital Auto Financial Services, Inc.), Roderick Bernard Johnson and Misty Dawn Johnson, Defendants.**

**Bankruptcy No. 3–00–08178.**

**Adversary No. 3–01–1426A.**

United States Bankruptcy Court, M.D. Tennessee.

June 6, 2002.

James A. Flexer, Esq., Jason Mangrum, Esq., Nashville, TN, for Debtors.

Barbara D. Holmes, Esq., Harwell, Howard, Hyne, Gabbert & Manner, Nashville, TN, for Hays Imports, Inc.

James David Nave, Esq., Nashville, TN, Chapter 13 Trustee.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

In a district that confirms Chapter 13 plans before the claims bar date, does confirmation of a "base" plan that does not allow or disallow claims preclude the trustee's objection to a claim filed after confirmation that reveals an avoidable lien? Confirmation does not preclude the trustee's action. The following are findings of fact and conclusions of law. FED. R. BANKR. P. 7052.

## FACTS

On August 17, 2000, the debtors purchased a car from Hays Mitsubishi with financing through G.E. Capital Corporation. G.E. Capital assigned the contract to Customized Auto Credit Services ("CACS"). Thirty-four days after the sale, on September 21, 2000, CACS applied for notation of its lien on the certificate of title.

One week earlier, on September 14, 2000, the debtors filed Chapter 13.[1] The car was listed on the schedule of assets and given a value of $15,000. G.E. Capital was scheduled as a secured creditor.[2] The Debtors' proposed plan listed G.E. Capital with a secured claim of $15,000, an interest rate of 6 percent and monthly payments of $300.

On September 22, 2000, the court issued a standard Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines. That notice set the § 341 meeting of creditors for October 26, 2000, and set January 24, 2001, as the deadline to file nongovernmental proofs of claim. The notice announced that hearing on confirmation of the Debtors' plan would also be October 26, 2000, unless a written objection was filed: "If no objections to value or the debtors' plan are raised at or prior to the meeting of creditors, the plan may be confirmed as unopposed."

The meeting of creditors was conducted on October 26, 2000. At that time, no proof of claim had been filed by Hays or G.E. Capital or CACS. There were no objections to confirmation. On October 26, 2000, the Debtors' plan was confirmed.

The Order Confirming Chapter 13 Plan and Notice of Opportunity to Object provides for G.E. Capital as follows:

4. From funds received, the Trustee shall disburse as follows:

\*  \*  \*  \*  \*  \*

\*  \*  \*  \*  \*  \*

d. To creditors holding allowed claims as follows:

\*  \*  \*  \*  \*  \*

ii. To secured claim holders, the amount of each allowed secured claim indicated below not to exceed the present value of each claim holder's security determined

---

1. The timing of this filing with respect to the purchase of the car was not raised by any party as an objection to confirmation. *See, e.g., In re Mathenia,* 220 B.R. 427, 433 (Bankr.W.D.Okla.1998) (lack of good faith found when debtor and nonfiling spouse acquired $19,000 car 11 days before nonfiling spouse filed a Chapter 7 petition and subsequent Chapter 13 petition permits debtor and nonfiling spouse to acquire assets and dis-

charge significant debt); *In re Barnes,* 191 B.R. 963, 965–67 (Bankr.M.D.Ga.1996) (proximity of purchase (105 days) of car to filing of Chapter 13 case indicates bad faith).

2. CACS is listed as first lienholder on the certificate of title. By agreement of the parties, Hays has been designated as the real party in interest.

by this order pursuant to 11 U.S.C. § 506.

| Creditor Name | Interest | Value | Monthly Payment |
|---------------|----------|--------|-----------------|
| G.E. Capital | 6% | $15,000 | $300 |
| * * | * | * | * * |

The secured claim holders listed above shall retain liens pursuant to 11 U.S.C. § [1325(a)(5)(B)].

The confirmed plan also stated, "allowed unsecured claim holders will be paid a dividend of at least 20%." Each debtor was required to submit future income to the trustee of $175 per week by payroll deduction. In addition, "the debtor(s) must pay a minimum 'base' dividend amount of $85,800 to complete payments under the plan." Finally, the confirmation order gave notice of an extended opportunity to object.[3]

3. The order provided:

NOTICE OF OPPORTUNITY TO OBJECT

PURSUANT TO 11 U.S.C. SECTION 1323 AND 1324 AND FED. R. BANKR. P. 9021, 2002 AND 3015, THIS ORDER SHALL NOT BECOME FINAL FOR A PERIOD OF 25 DAYS. ANY PARTY IN INTEREST SEEKING TO BE RELIEVED FROM ITS PROVISIONS PURSUANT TO RULE 9023, FEDERAL RULES OF BANKRUPTCY MUST FILE A WRITTEN APPLICATION WITHIN THAT 25 DAY PERIOD. FAILURE TO FILE SUCH MOTION SHALL BE DEEMED A WAIVER OF ALL OBJECTIONS TO ANY CHANGES OR MODIFICATIONS TO TREATMENT OF CLAIMS MADE AT CONFIRMATION AND AN ACCEPTANCE OF THE PROVISIONS OF THIS CONFIRMED PLAN.

4. The complaint also requests that the confirmed plan be modified under § 1329 to reflect the avoidance of G.E. Capital's lien. As explained below, modification of this plan is not necessary when Hays' secured claim is disallowed by § 502(d).

5. Under Tennessee law, a security interest in a motor vehicle is perfected by delivery of the certificate of title to the division of motor vehicles or to the county clerk with an application for a certificate of title containing the name and address of the lien holder, vehicle description and the required registration fee. TENN. CODE ANN. § 55–3–126(b)(1) (Michie 1998 & Supp.2001). The security interest is perfected as of the date of delivery of the application, provided the application is deliv-

After entry of the confirmation order, the Chapter 13 trustee requested G.E. Capital to provide proof of perfection of its security interest. On November 20, 2000, G.E. Capital filed a proof of claim with attachments revealing the perfection of its lien a week after the petition and 34 days after sale of the car.

On July 26, 2001, the Chapter 13 trustee filed this complaint to avoid perfection of G.E. Capital's lien as a preference under 11 U.S.C. § 547 or as an unauthorized postpetition transfer under 11 U.S.C. § 549.[4]

On cross-motions for summary judgment, Hays (for G.E. Capital and CACS) does not contest the trustee's assertion that its lien is avoidable.[5] Hays contends

ered within 20 days after the date the security interest is created. TENN. CODE ANN. § 55–3–126(d) (Michie 1998 & Supp.2001).

11 U.S.C. § 549(a) provides:

[T]he trustee may avoid a transfer of property of the estate-
(1) that occurs after the commencement of the case; and
(2)(A) that is authorized only under section 303(f) of 542(c) of this title; or
(B) that is not authorized under this title or by the court.

The transfer effected by delivery of the application for title on September 21, 2000, was made after the filing of the debtors' bankruptcy case on September 14, 2000. That transfer was not authorized by the bankruptcy court. Since the security interest attached when the debtors acquired rights in the property on August 17, 2000, perfection occurred more than 20 days after the security interest attached, thus precluding relation back of perfection to the date of the security interest. See TENN. CODE ANN. § 55–3–126(b)(2) (Michie 1998 & Supp.2001). Perfection is not protected by 11 U.S.C. § 546(b)(1). Hays' lien is avoidable under § 549.

In the alternative, analyzed as a preference under § 547, the perfection of Hays' security interest is deemed by § 547(e)(2)(C) to have occurred immediately before the petition. That transfer meets the conditions for avoidance as a preference.

only that confirmation of the plan precludes the trustee's complaint. In support of preclusion, Hays makes two arguments: (1) The express provisions of the plan bar the trustee's action under § 1327(a); (2) when called on to decide the issue, the Sixth Circuit would extend its holding in *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458 (6th Cir.1991), to preclude this action by the Chapter 13 trustee.

## DISCUSSION

■ Notwithstanding sympathy for Hays' predicament,[6] Hays' arguments invite a misreading of the confirmed plan and threaten to distort the effects of confirmation under the Bankruptcy Code. 11 U.S.C. § 1327(a) provides: "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." In this district, the plan that is binding on all parties under § 1327(a) is contained in the Order Confirming Chapter 13 Plan excerpted above. This form is completed by the Chapter 13 trustee at the meeting of creditors and is used in every Chapter 13 case. This form was developed over many years by the Chapter 13 trustee and the bankruptcy bar to facilitate the confirmation of Chapter 13 plans as quickly as permitted by the Bankruptcy Code and Rules and well in advance of the bar date for the timely filing of proofs of claim.

The confirmed plan in this case conspicuously and intentionally does not allow or disallow any claim. Bankruptcy Rule 3002(c) fixes 90 days after the first date set for the § 341 meeting of creditors as the deadline for timely filing of nongovernmental proofs of claim in Chapter 13 cases. Because confirmation occurs in most Chapter 13 cases in this district within 50 days of the petition, the bar date for the timely filing of claims does not pass for several months after confirmation. Creditors occasionally file proofs of claim before confirmation but most do not. To confirm plans before the claims bar date without prejudice to creditors that file timely claims after confirmation, forms and procedures evolved that isolate claims allowance issues from the matters that must be addressed to determine the confirmation of plans. The absence of any language in this plan allowing or disallowing any claim is a fundamental recognition that claims will be filed, allowed and sometimes, disallowed *after* confirmation in Chapter 13 cases.

The possibility (inevitability) that some claims will be allowed and others will be disallowed after confirmation is fully accounted for in the confirmed plan. The plan in this case is sometimes called a "base" or "pot" plan. *See, e.g., Max Recovery, Inc. v. Than (In re Than)*, 215 B.R. 430, 432 n. 2 (9th Cir. BAP 1997) ("A pot plan provides that the debtor will pay a fixed amount, thus the percentage creditors receive will depend on the total amount of approved claims"); *In re Bass*, 267 B.R. 812, 814–17 (Bankr.S.D.Ohio 2001) (only "base or percentage, whichever

---

**6.** Hays found itself trapped in a Chapter 13 case literally before its agent perfected its security interest in the car sold to the debtors. Had CACS acted timely and perfected G.E. Capital's security interest within the 20–day relation-back period under Tennessee law, the Bankruptcy Code might have protected that lien from avoidance in this Chapter 13 case.

This unusual combination of circumstances—tardy perfection of the lien under state law and the filing of a Chapter 13 case so close in time to purchase of the car—exposes Hays to the rights of other creditors in an avoidance action under the Bankruptcy Code. Hays is in one sense a victim and in another sense it is the architect of its own misfortune.

is greater" plan satisfies all confirmation tests); *In re Duggins*, 263 B.R. 233, 240 (Bankr.C.D.Ill.2001). Starting from the amount of disposable income[7] that the debtors will have during the life of the plan, a base is calculated that is the minimum amount of money that must be paid to the trustee before the plan is completed. In this Chapter 13 case, that minimum amount or base was $85,800. The plan also states a minimum percentage of payment (20%) to unsecured claim holders. The plan cannot be completed without satisfaction of the greater of the two conditions.

Because allowed claims *cannot* be known at confirmation in this district, the plan provides that only "allowed" claims will be paid from the base amount. The confirmation order then precisely sets forth the treatment for each category of "allowed" claims—secured, priority, unsecured, etc. The confirmation order repeatedly authorizes the trustee to distribute funds *only* to creditors that hold allowed claims. Bankruptcy Rule 3021 authorizes the trustee to make disbursements only to "creditors whose claims have been allowed." FED. R. BANKR. P. 3021.

When a claim is disallowed after confirmation, the money that would have been paid to that creditor under the confirmed plan is simply redistributed through the base or pot and paid to other creditors holding allowed claims. In this case, the $15,000 value stated for Hays' collateral and the interest to maintain that value are mathematically included in the base amount that the debtors must pay to the trustee before the plan is completed. If that $15,000 with interest is not distributed on account of Hays' *secured* claim because its lien is avoided, the $15,000 plus interest is automatically redistributed by the plan to other creditors, increasing the dividend to unsecured claim holders from the minimum 20% stated in the plan. Hays would share in the enlarged pot available for allowed unsecured claim holders. This mechanism accounts for the allowance or disallowance of claims after confirmation and permits accelerated confirmation of Chapter 13 plans.[8]

The Bankruptcy Code fully supports this plan and allows confirmation before claims litigation. Neither the Code nor Rules fixes a particular timing for confirmation of Chapter 13 plans.[9] Congress has encouraged bankruptcy courts to confirm Chapter 13 plans in advance of the claims bar date. In 1994, Congress amended § 1326(a)(2) of the Code to mandate that Chapter 13 trustees begin distributions "as

---

7. *See* 11 U.S.C. § 1325(b).

8. This feature of the base plan also explains why the trustee's request for modification is unnecessary. Disallowance of Hays' secured claim does not require modification of the plan and does not invoke § 1329. As explained below, the Code itself disallowed Hays' putatively secured claim in § 502(d). The confirmed base plan fully protects Hays and provides for Hays as an unsecured claim holder in the event that its security interest is avoided and its secured claim disallowed. No modification of the confirmed plan is necessary. The Sixth Circuit's decision in *Chrysler Financial Corporation v. Nolan (In re Nolan)*, 232 F.3d 528 (6th Cir.2000), is not to the contrary. This is not a *Nolan* case. The trustee does not need to modify the plan to disallow Hays' claim. No "reconsideration" of Hays' claim is required because Hays' unfiled claim was not an allowed secured claim for purposes of confirmation.

9. Pending legislation would require confirmation *before* the claims bar date. *See* S. 420, 107th Cong., § 317 (2001) (Amends 11 U.S.C. § 1324, adding (b), which reads: "The hearing on confirmation of the plan may be held not earlier than 20 days and not later than 45 days after the date of the meeting of creditors under section 341(a)."); H.R. 333, 107th Cong., § 317 (2001).

soon as practicable" after confirmation. Congressman Brooks explained: "Such payments should be made even prior to the bar date for filing claims, but only if the trustee can provide adequate protection against any prejudice to later filing claimants caused by distributions prior to the bar date." [10] The base plan in this district is part of the protection that permits confirmation before litigation of the allowance of claims.

The durability of Hays' security interest is a fundamental aspect of allowance of its secured claim. As stated in § 502(d) of the Code: "[T]he court shall disallow any claim of any entity ... that is a transferee of a transfer avoidable under section ... 547, ... [or] ... 549 ... unless such ... transferee has ... turned over any such property." When Hays filed its postconfirmation proof of claim and the trustee determined from the attachments that Hays perfected its security interest after the petition, the trustee could have initiated this litigation by filing an objection to Hays' claim under Bankruptcy Rule 3007. Had he done so, as recited in Rule 3007, that objection would have become this adversary proceeding because it would have included demands for relief under §§ 547 and 549. By either route, once this challenge was filed, the Bankruptcy Code disallowed Hays' claim unless and until avoidance of its security interest is determined. The defect in Hays' security interest—that its lien is avoidable by the trustee in bankruptcy—is just one of many reasons why a claim might be disallowed in a Chapter 13 case. Nothing in the form plan in this district presumes to preclude objections to the allowance of claims after confirmation.

■ Although the value of collateral is determined through the confirmation process in this district, valuation does not morph into allowance of unfiled claims when a value is stated in the plan. Hays' argument about the language of the plan confuses the valuation of collateral with the filing and allowance of proofs of claim. As the Supreme Court recognized in *Dewsnup v. Timm,* 502 U.S. 410, 415, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), the valuation of collateral under § 506(a) of the Bankruptcy Code is a process separate and distinct from the allowance of claims under § 502. Chapter 13 plans typically state a value for collateral in order for the court to determine whether the confirmation requirement in § 1325(a)(5) is satisfied. Feasibility of the plan under § 1325(a)(6) may turn on the value of collateral because the court must determine whether there will be enough money to make monthly payments that will retire secured claims based on the values determined at confirmation.

Paragraph 4(d) of the confirmation order tracks the requirements for confirmation of a Chapter 13 plan with respect to secured claims under § 1325(a)(5)(B). The paragraph provides for lien retention, values collateral, provides "present value" in the form of interest and specifies the monthly payment necessary to pay that present value within the life of the plan. Confirmation in this case may well be preclusive of relitigation of the $15,000 value for Hays' collateral stated in the confirmation order,[11] but the language of the confirmation order does not stretch to validate all security interests, bar all avoidance actions and allow all secured claims.

Hays' argument that specification of value allowed its unfiled claim and put its lien beyond avoidance misreads the plan and leads to absurd results. It is fundamental

---

**10.** 140 Cong. Rec. H10,770 (section-by-section analysis by Congressman Brooks).

**11.** An issue not before the court.

that a creditor must file a proof of claim before it can have an allowed claim in a Chapter 13 case. *See* 11 U.S.C. §§ 501 & 502. It is certainly possible—though not advisable [12]—for a plan to state that confirmation will allow all claims. But there is nothing in the form plan in this district suggesting that the plan allowed any claim or was intended to function as a proof of claim on behalf of any creditor. The same language is used in the form plan to describe the payment of *secured and unsecured* claims: "To creditors holding allowed claims as follows: .... [A]llowed unsecured claimholders will be paid a dividend of at least 20%." Hays' argument would preclude postconfirmation objections to all claims without regard to security, validity, timeliness or any other obstacle to allowance. There is no support for this outcome in the Code or in any case cited by Hays.

■ That a Chapter 13 plan can determine the value for a secured claim at confirmation without addressing the allowance of claims is well recognized. As explained by the bankruptcy court in *In re Fareed*, 262 B.R. 761, 769–70 (Bankr. N.D.Ill.2001):

There is ample ground for holding that confirmation should determine the value of a creditor's security interest under § 506(a). Section 506(a) expressly requires that collateral be valued 'in conjunction with any hearing on ... a plan affecting [a secured] creditor's interest.' In contrast, there is nothing in the Code that requires claim objections, under § 502(b), to be determined at the time of confirmation.

It is practicable and reasonable to require that collateral value, under § 506(a), be established at the time of confirmation. Secured claims in Chapter 13 cases are relatively few in number and of substantial importance to the confirmation process, so a debtor can reasonably be required to adjudicate collateral value at confirmation, providing certainty as to the payments required to be made on secured claim and facilitating a determination by the court that the debtor will be able to make the required plan payments. ...

On the other hand, a requirement that the allowance of claims under § 502 be fully adjudicated at the time of confirmation is not practicable, and would substantially delay confirmation and creditor payment. Unsecured claims against a debtor are often numerous and of small, but uncertain, amount; Chapter 13 plans therefore generally rely on the creditor's proof of claim to indicate the amount of each claim owing, and then direct that unsecured claims be paid pro rata from funds available after higher priority claims are paid. It would be unrealistic to expect a debtor's plan to assert a separate value for each unsecured claim. Moreover, the general deadline for filing proofs of claim (90 days after the first date set for a § 341 meeting) can be substantially after the time of the confirmation hearing—in the present case, the claims deadline did not occur until nearly two months after confirmation, and the 30–day notice requirement for claim objections would extend the time needed for adjudicating claim objections even further.

Preclusion on these facts is not supported by reported cases in which secured claim holders filed proofs of claim before confirmation and successfully argued that *value* could not be relitigated after confir-

---

**12.** Creditors and Chapter 13 trustees would have many obvious reasons to object to confirmation of any plan that presumed to allow claims without the filing of proofs of claim and before any opportunity to examine claims.

mation. For example, in *Adair v. Sherman*, 230 F.3d 890 (7th Cir.2000), the confirmed plan recited only that secured claims would be paid in full. A car lender's proof of claim filed *before* confirmation listed a value that the debtor sought to challenge in a Fair Debt Collections Practices Act complaint filed in district court after the Chapter 13 case was dismissed. The Seventh Circuit found that the value of the car could not be challenged in the FDCPA action because of issue preclusion.

This adversary proceeding is not about the value of collateral stated in a confirmed plan or in a proof of claim filed before confirmation. Hays filed no such claim and *Adair* has no application here. *See also In re Duggins*, 263 B.R. 233, 241–43 (Bankr.C.D.Ill.2001); *Fareed*, 262 B.R. at 769–70; *In re Hudson*, 260 B.R. 421 (Bankr.W.D.Mich.2001).

Hays' reading of the confirmed plan would disable the Chapter 13 trustee from satisfying his fiduciary duties to creditors. Chapter 13 trustees are prevented by Bankruptcy Rule 3002 from forcing creditors to file proofs of claim before confirmation. Chapter 13 trustees have a fiduciary obligation to object to claims, to examine the validity of security interests and to prosecute avoidance actions during the Chapter 13 case. *See* 11 U.S.C. § 1302(b). The 1994 amendments to § 546 made this obligation imperative by imposing a two year limitation on avoidance actions that begins to run at the filing of a Chapter 13 petition. *See Murphy v. Wray (In re Wray)*, 258 B.R. 777 (Bankr.D.Idaho 2001); *Lee v. National Home Ctrs., Inc. (In re Bodenstein)*, 248 B.R. 808 (Bankr. W.D.Ark.2000).

Given the volume of Chapter 13 cases and the enormous number of claims, it is impossible for the Chapter 13 trustee to identify objectionable claims and avoidable liens until after claims are filed and the attachments are examined. Hays' suggestion that the Chapter 13 trustee can object to confirmation of any plan when the validity of a security interest, the avoidance of a lien or the allowance of a (unfiled) claim is unresolved would require speculative objections in every Chapter 13 case that reaches confirmation before the claims bar date. Neither the Code nor the Rules puts a "confirmation" time limit on the filing of objections to claims. *See* Fed. R. Bankr. P. 3007. The victims of Hays' construct would be unsecured creditors that would forfeit equitable collection and distribution of the estate when confirmation of a plan precludes recovery of avoidable transfers and bars objections to disallowable claims.

This discussion of § 1327(a) and the confirmed plan would end here but for an unreported case from the Sixth Circuit that raises the possibility that the preclusive effect of confirmation of a Chapter 13 plan is broader than the plain language of the plan.

A panel of the Sixth Circuit addressed the binding effect of a Chapter 13 plan under § 1327(a) in a footnote in *Cline v. Welch (In re Welch)*, 1998 WL 773999 (6th Cir. Oct.11, 1998):

> [T]he language of § 1327 and the need for finality in the multilateral bankruptcy context ... bar the introduction of *issues that could have been raised* at confirmation. Utilizing the more relaxed common law issue preclusion standard, by comparison, would allow certain creditors to raise claims against the bankruptcy estate collaterally that could and should have been raised in the confirmation process, but were not actually litigated or decided at that stage. Such a result would be contrary to the design and intent of the Bankruptcy Code.
>
> Although the courts often invoke the term 'res judicata' in describing the

§ 1327(a) bar to relitigation, it should be recognized that this statutorily derived bar equates to neither traditional claim preclusion nor traditional issue preclusion. '[C]laim preclusion ... is the doctrine ... by which a final judgment on the merits in an action precludes a party from bringing a subsequent lawsuit on the same claim or cause of action or raising a new defense to defeat a prior judgment.' Claim preclusion often is applied in the bankruptcy context.... Unlike claim preclusion, § 1327 does not bar the entire action. Preclusion under § 1327 is somewhat harsher than common law issue preclusion, however. At common law the litigation of an issue is precluded only if that issue was actually litigated and decided and if the determination of that issue was necessary to the judgment in a previous action between the parties. Under § 1327, as it has been interpreted, an issue is precluded if it *could have been decided* at confirmation, whether or not it was actually decided.

*Id.* at *2 & n. 1 (internal citations omitted).

*Welch* is an unreported decision with limited precedential value.[13] *Welch* involved an objection to discharge after completion of payments in a Chapter 13 case. The issue before the Sixth Circuit was whether the debtors could prepay the plan to accelerate discharge. The majority in *Welch* concluded that prepayment was an issue that "could have been appealed at confirmation" and thus, the objecting creditor was precluded from raising the issue "in her appeal of the debtors' discharge." *Id.*, at *3. The majority distinguished cases involving "challenges to the validity of spe-cific claims or liens that genuinely were not mature at the time of confirmation or that could not have been raised except through an adversary proceeding." *Id.* at *3 n. 5.

The validity of Hays' lien and the allowance of Hays' secured claim are precisely the issues that the *Welch* majority recognized would not be precluded by its expanded view of § 1327(a). These issues were not mature and could not have been decided at the time of confirmation in this Chapter 13 case in advance of the claims bar date and before the defect in Hays' lien was revealed by Hays.

Neither the "actually litigated," "necessarily decided" nor "could have been decided" standards mentioned in *Welch* would change the outcome of this case. The avoidance of Hays' defective lien and the allowance of Hays' unfiled claim were not actually litigated at confirmation.

Neither the allowance of Hays' claim nor the avoidance of Hays' lien was necessarily determined at confirmation. Allowance and avoidance issues are unnecessary to confirmation in this district because the base plan addresses the requirements for confirmation without allowing or disallowing claims and without validating or avoiding security interests. This plan reserves all such questions until after the claims bar date when information is available to evaluate claims and liens.

Avoidance of Hays' lien could not have been decided at confirmation in this case. The trustee (or a creditor) could not object to Hays' claim before confirmation because no such claim was filed until after confirmation.[14] The trustee could not file an

13. *See* 6th Cir. R. 206; *United States v. Ennenga,* 263 F.3d 499, 504 (6th Cir.2001) (unpublished decisions are not binding precedent).

14. The debtors' prophylactic proof of claim filed without attachments on behalf of Hays on October 26, 2000, is not argued by the parties. Perhaps that claim was permitted by Bankruptcy Rule 3004 notwithstanding that

adversary proceeding before confirmation because Hays' unperfected lien was unknown until Hays filed a proof of claim after confirmation with attachments that showed the defect. Confirmation itself was not an adversary proceeding within which avoidance of Hays' lien could have been litigated.[15]

It might be argued that the confirmed plan in this case is "silent" with respect to the allowance or disallowance of claims. This interpretation is not supported by any reading of the plan itself, is possible only out of context and is mentioned but not pressed by Hays. In another context, one court of appeals has addressed the preclusive effect of silence with respect to the survival of liens after confirmation.

In *In re Penrod*, 50 F.3d 459 (7th Cir. 1995), the Seventh Circuit considered whether a prepetition lien survived confirmation of a Chapter 11 plan that was silent with respect to retention of liens. The Seventh Circuit stated the question as "what … is the default rule when the plan is silent?" The Seventh Circuit concluded that a prepetition lien did not survive confirmation of a Chapter 11 plan when the

plan provided for payment of the claim but did not specifically retain the lien.

The Chapter 11 provision at issue in *Penrod*, § 1141(c), states that property dealt with by the plan is free and clear of claims or interests except as provided otherwise by the plan or order of confirmation. The absence of a lien-preserving provision in the plan was the problem in *Penrod*.

A similar "free and clear" provision applies in Chapter 13 cases under § 1327(c). To accomplish confirmation of this Chapter 13 plan before the claims bar date, the plan provided that Hays retained its lien consistent with § 1325(a)(5)(B)(i); but the predicate for that lien retention is plainly stated in the plan: only *allowed* secured claim holders retain liens.

Allowance of Hays' claim—as distinct from valuation of its collateral—was not and could not be decided at confirmation because Hays had not yet filed a proof of claim. *Penrod* is not helpful of Hays' position because this plan was not silent with respect to lien retention, it simply provided for Hays' lien only if Hays filed a proof of its claim and accomplished allowance of a secured claim.

---

the filing was not consistent with § 502(2) of the Code. Hays' "superseding" claim was probably permitted by Bankruptcy Rule 3004, but it is not disputed that the plan was confirmed before any claim was filed and it is undisputed that the documents revealing that Hays' security interest was defective were filed by Hays well after confirmation of the plan.

**15.** Many reported decisions require exactly what the Chapter 13 trustee did here: the filing of an adversary proceeding separate from confirmation to avoid Hays' lien. Ironically, Hays takes the side opposite to the usual position of secured creditors in Chapter 13 cases. Typically, the secured claim holder wakes up after confirmation to challenge a plan provision that avoids its lien or treats its lien as an unsecured claim. Many courts hold that confirmation of a Chapter 13 plan

cannot avoid liens without some other action by the debtor or trustee such as the filing of a claim objection or the filing of a separate adversary proceeding. *See, e.g., Cen–Pen v. Hanson*, 58 F.3d 89 (4th Cir.1995); *Sun Fin. Co. v. Howard (In re Howard)*, 972 F.2d 639 (5th Cir.1992). Here the trustee could not file a claim objection or adversary proceeding before confirmation because Hays did not file the proof of claim that revealed its avoidable lien until after confirmation. If confirmation cannot function as an objection to claim or as an adversary proceeding when a creditor asserts that its lien was *not* affected by the plan, no obvious statutory or equitable imperative makes that same plan preclusive of the trustee's adversary proceeding to avoid a defective lien revealed in a claim filed after confirmation.

Perhaps the most substantial argument by Hays is that when called upon to decide a Chapter 13 case involving an avoidance action after confirmation, the Sixth Circuit will extend *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458 (6th Cir.1991), to bar the cause of action. *Chattanooga Wholesale* is distinguishable in fundamental respects. The Sixth Circuit's discussion of the preclusive effect of confirmation of a Chapter 11 plan does not translate into this Chapter 13 context.

In *Chattanooga Wholesale*, the debtor began in a Chapter 11 case. Within 90 days before the Chapter 11 petition, the debtor made payments to a bank. After filing Chapter 11 but before confirmation and before a bankruptcy court order authorized adequate protection payments, the debtor made a payment to the bank. A Chapter 11 plan was confirmed that treated the bank as a secured claim holder with a perfected lien on inventory. After confirmation, payments to the bank continued until conversion to Chapter 7. After conversion, the Chapter 7 trustee filed an adversary proceeding claiming that the bank did not have a security interest in the debtor's inventory and as a result, the prepetition, postpetition and postconfirmation payments were either preferences under § 547 or unauthorized postpetition payments under § 549.

The Sixth Circuit affirmed the Chapter 7 trustee's recovery of the prepetition payments as avoidable preferences. The Sixth Circuit sustained the trustee's recovery of the postpetition, preconfirmation payments as unauthorized postpetition transfers under § 549. The Sixth Circuit refused recovery of payments to the bank after confirmation based on the effect of confirmation under § 1141.

As explained by the Sixth Circuit, postconfirmation payments to the bank were not recoverable because § 549(a) limits avoidance to "a transfer of property of the estate." At confirmation, § 1141(b) vested all property of the Chapter 11 estate in the debtor. "Since all the debtor's property revested, it is clear that the trustee may not avoid any transfers which occurred after confirmation of the debtor's plan." [16]

In an alternative holding—and it is this alternative holding that Hays promotes— the Sixth Circuit rejected the Chapter 7 trustee's effort to "recover the postconfirmation payments to the bank by attacking the propriety of the confirmed plan." [17] The trustee argued "it is inequitable for the bank, which had not perfected its security interest, to receive the benefit of a plan that treated it as a secured creditor." [18] The Sixth Circuit rejected this argument based on the finality of the confirmation order and principles of res judicata:

Confirmation of a plan of reorganization by the bankruptcy court has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings.... Without this rule there would be no finality to confirmed plans. All of the payments were made while the debtor was operating under the Chapter 11 plan and before conversion to Chapter 7.... "Payments made during an ongoing Chapter 11 should not be 'reeled in.' As long as payments are made as required by the plan, and the plan remains

---

16. 930 F.2d at 462.

17. *Id.* at 463.

18. *Id.* at 463.

in effect, a party can rely on the payments being final." [19]

*Chattanooga Wholesale* does not foretell that the Sixth Circuit would preclude the Chapter 13 trustee's avoidance action in this case. The Chapter 13 trustee here is not attacking the propriety of the confirmed plan. As detailed above, the confirmed plan in this case does not allow Hays' claim nor does it validate Hays' defective security interest.

In contrast to Hays' claim in this Chapter 13 case, the bank's claim in *Chattanooga Wholesale* was *deemed allowed* at the time of confirmation by § 1111(a) of the Bankruptcy Code.[20] The Sixth Circuit so held.[21] There is no analog to § 1111(a) in Chapter 13 cases. Only claims actually filed are allowed in a Chapter 13 case.

The effect of § 1111(a) in *Chattanooga Wholesale* was that the postconfirmation payments were to the holder of an *allowed* secured claim and were authorized by the confirmed plan. Here, Hays did not file a claim until November 20, 2000, after confirmation. Upon the filing of the trustee's complaint, § 502(d) disallowed that claim until resolution of this adversary proceeding.

In *Chattanooga Wholesale*, the recovery of the postconfirmation payments under § 549(a) was precluded by the vesting of estate property in the debtor at confirmation under § 1141(b). There is a similar

provision in Chapter 13—11 U.S.C. § 1327(b) provides that property of the estate vests in the debtor at confirmation *unless* the plan or the order of confirmation provides otherwise. Here, the confirmation order precisely provides otherwise: "All property shall remain property of the estate and shall vest in the debtor(s) only upon dismissal, discharge or conversion." This provision preserves the trustee's avoidance actions through confirmation, including the recovery of unauthorized postpetition transfers. Preservation of the estate is another aspect of the "protection" the plan in this district provides for the rights of creditors that timely file allowable claims after confirmation.

Hays argues only part of *Chattanooga Wholesale*. The Sixth Circuit affirmed the Chapter 7 trustee's recovery of the prepetition payments to the bank as preferences under § 547 and affirmed recovery of payments by the Chapter 11 debtor in possession made between the petition and confirmation. These causes of action were commenced long after confirmation but were not precluded by confirmation of the plan.

The fundamental differences between Chapter 11 cases and Chapter 13 cases support the conclusion that the alternative holding in *Chattanooga Wholesale* should not be broadly expanded in the context of

**19.** *Id.* at 463. *See also Browning v. Levy*, 283 F.3d 761, 772 (6th Cir.2002) (Quoting *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir.1997): "As a general rule, the '[c]onfirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings.' Such confirmation by a bankruptcy court 'has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that *could have been raised* in the confirmation proceedings.' ") (internal citations omitted; emphasis added).

**20.** 11 U.S.C. § 1111(a) provides:

A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated.

**21.** 930 F.2d at 462 ("The bank's claim was not listed as 'disputed,' 'contingent' or 'unliquidated;' therefore, it was deemed filed under § 1111(a).").

230

a Chapter 13 program that confirms plans in advance of the claims bar date.

Chapter 13 cases move very quickly from filing to confirmation. The Chapter 13 confirmation process in this district typically ends in 50 days or less—at the very beginning of the 90–day counting period for the timely filing of nongovernmental claims under Bankruptcy Rule 3002(c). It is happenstance if a proof of claim is filed before confirmation and a claim filed hours or a few days before the meeting of creditors is invisible to the debtor, the trustee and other creditors.

The preconfirmation period in a Chapter 11 case is very different. The typical Chapter 11 case is pending a year or more before confirmation. *See* Ed Flynn & Gordon Bermant, *Bankruptcy by the Numbers—Delaware Chapter 11's*, XXI AM. BANKR. INST. J. (March 2002), available at <http:// www.usdoj.gov/ust/press/articles/abi–032002.htm> (nationwide average from filing to confirmation in Chapter 11 cases is 528 days). In a Chapter 11 case, the bankruptcy court sets a deadline for the filing of proofs of claim under Bankruptcy Rule 3003(c)(3) that is almost always before confirmation. Because there is voting at confirmation in a Chapter 11 case, disputed proofs of claim typically must be filed and significant disputes resolved *before* confirmation. As indicated above, undisputed claims in a Chapter 11 case are "deemed allowed" before confirmation based on the schedules. In a Chapter 11 case, the outcome of the confirmation process is often dependent on review of claims and security interests.

Perhaps equally important to this picture, there is no discharge at confirmation in a Chapter 13 case as there is at confirmation in a Chapter 11 case. Discharge at confirmation under § 1141 is a fundamental imperative to the resolution of many issues that are not ripe for months or even

years after confirmation in a Chapter 13 case.

This court does not believe that *Chattanooga Wholesale* should be read to signal that confirmation of this Chapter 13 plan is preclusive of the trustee's challenge.

An appropriate order will be entered.

### ORDER

For the reasons stated in the memorandum filed contemporaneously, IT IS ORDERED, ADJUDGED and DECREED that Hays' lien is avoided by the trustee. Hays' secured claim is disallowed. The trustee's request for modification of the plan is denied.

IT IS SO ORDERED.